MORRELL MASONRY SUPPLY,
INC., Appellant,

v.

LUPE'S SHENANDOAH RESERVE,
LLC, Appellee.

No. 09–11–00284–CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 26, 2012.

Decided March 22, 2012.

Karalynn Cromeens, The Cromeens Law Firm, P.L.L.C., Tina Snelling, Houston, for appellant.

Craig H. Clendenin, Cokinos, Bosien & Young, Houston, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

This case requires us to decide whether a materialman to a subcontractor must give notice to the original contractor to perfect a lien and to recover on fund-trapping and retainage claims against the landowner. Because the statute that creates the rights of derivative suppliers requires timely notice to perfect a lien, we hold that a failure to provide notice in accordance with the statute precludes recovery.

### Background

As a derivative claimant seeking to recover on invoices for materials provided to a subcontractor on a commercial construction contract, the appellant, Morrell Masonry Supply, Inc. ("Morrell"), brought statutory fund-trapping and retainage claims against the owner, Lupe's Shenandoah Reserve, LLC ("Lupe's"), and its insurer, Berkley Regional Insurance Company ("Berkley"). *See* Tex. Prop.Code Ann. §§ 53.084, 53.105, 53.151 (West 2007 &

Supp. 2011).[1] After denying Morrell's motion for summary judgment, the trial court granted an interlocutory take-nothing partial summary judgment on Morrell's claim for $14,021.08 for materials provided in October 2008. *See* Tex. Prop.Code Ann. § 53.160 (West Supp. 2011). The remaining issues were tried to the court, which (1) ordered Lupe's to unconditionally tender to Morrell the sum of $6,698.25 for materials provided in November 2008, (2) awarded to Morrell attorneys' fees in the amount of $2,000 for fees incurred collecting the invoice for materials provided in November 2008, (3) ordered that Morrell take nothing on its claim against Lupe's for materials provided in October 2008, (4) ordered the release and discharge of Morrell's mechanic's and materialman's lien upon payment of $6,698.25, (5) ordered the release of the indemnity bond and discharge from liability of Berkley and the original contractor, Comanche Construction, L.P. ("Comanche"), and (6) awarded to Lupe's attorneys' fees and expenses in the amount of $32,452.93 incurred defending against Morrell's claims relating to the October 2008 invoices. Morrell raises five issues on appeal.

### Pre–Lien Notice and Fund–Trapping

Morrell alleged that Lupe's hired Comanche as a general contractor to construct improvements on the property subject to Morrell's lien claim. Comanche hired Joyce's Stucco Design ("Joyce's") to complete a portion of the improvements. Joyce's obtained materials from Morrell but refused to pay for them. The summary judgment record established that on January 13, 2009, Morrell mailed a notice of claim to Lupe's, Comanche, and Joyce's, for unpaid invoices totaling $20,719.33. Morrell's pleadings allege invoices in the sum of $14,021.08 were dated October 2008

and invoices totaling $6,698.25 reflect the billed price for materials delivered in November 2008.

To perfect a lien under Chapter 53 of the Texas Property Code, a person must comply with Subchapter C of Chapter 53. *See* Tex. Prop.Code Ann. § 53.051–.058 (West 2007 & Supp. 2011). Section 53.056 of the Property Code governs the notice required for a derivative claimant's lien to be valid. *See id.* § 53.056(a). ("[A] claimant other than an original contractor must give the notice prescribed by this section for the lien to be valid."). First, "[t]he claimant must give the notice [to the original contractor] not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered." *Id.* § 53.056(b). Then "[t]he claimant must give the same notice to the owner or reputed owner and the original contractor not later than the 15th day of the third month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered." *Id.* The notice that Morrell mailed to Comanche and Lupe's was timely as a three-month notice but was untimely as a two-month notice. *See id.*

Morrell contends that its failure to notify Comanche of Morrell's lien claim by December 15, 2008 does not affect the validity of its lien. Morrell reasons that it perfected its fund-trapping claim by sending to both Lupe's and Comanche notice of its claim for materials delivered in October 2008 within ninety days after that indebtedness accrued. *See id.* § 53.053(c). Morrell contends that its lien is valid because Comanche failed to dispute the claim by sending written notice to Lupe's within thirty days of Morrell's January 13, 2009 notice. *See id.* § 53.083(b). However,

---

1. A former version of the statutes applies here. Unless the 2011 amendments to Chapter 53 materially affect our analysis, we cite to the current version of the statutes.

Section 53.083(d) provides that a demand cannot be made unless the lien has been secured. *See id.* § 53.083(d) ("Unless the lien has been secured, the demand may not be made after expiration of the time within which the claimant may secure the lien for the claim."). Under the express conditions of the statute, Morrell's right to trap funds payable by the owner to the original contractor depends upon Morrell having "secured" a lien. *See id.*

Morrell argues that this court's holding in *Don Hill Construction Company v. Dealers Electrical Supply Company* governs this case as binding precedent. *See* 790 S.W.2d 805 (Tex.App.-Beaumont 1990, no writ). In *Don Hill,* the materialman who supplied a subcontractor sent a late first notice of non-payment to the original contractor. *Id.* at 806. This Court held that the materialman's failure to provide the first notice to the original contractor did not affect the liability of an owner who received the three-month notice. *Id.* at 809–10. The original contractor received the three-month notice but did not dispute the claim. *Id.* at 810. The opinion refers to Section 53.084, which states that the owner's property is subject to a claim for money paid to the original contractor after the owner becomes authorized to withhold funds, but such opinion fails to explain how the lien had been secured as required by the statute. *Id.; see* Tex. Prop.Code Ann. § 53.084(b).

▮ "Because a subcontractor is a derivative claimant and, unlike a general contractor, has no constitutional, common law, or contractual lien on the property of the owner, a subcontractor's lien rights are totally dependent on compliance with the statutes authorizing the lien." *First Nat'l Bank in Graham v. Sledge,* 653 S.W.2d 283, 285 (Tex.1983). "[S]ubstantial compliance with the statutes is sufficient to perfect a lien under the Act." *Id.* "To determine whether the subcontractors have valid liens, we must compare the steps the subcontractors took to perfect their liens with the statutory requirements." *Id.* at 286. The fund-trapping statute requires a notice to the original contractor no later than the fifteenth day of the second month, followed by the same notice to the owner and the original contractor not later than the fifteenth day of the third month following delivery. Tex. Prop.Code Ann. § 53.056(b). The person claiming the lien must then file an affidavit with the county clerk not later than the fifteenth day of the fourth month after the day on which the indebtedness accrued. *Id.* § 53.052(a). The indebtedness accrues on the last day of the month in which the material was furnished. *Id.* § 53.053(c).

In *Don Hill,* this Court determined that establishing the original contractor's and the owner's liability requires separate notices and that the notices required to hold the original contractor liable to a derivative claimant do not affect the liability of the owner. *Don Hill,* 790 S.W.2d at 809–10. However, such construction of the statute failed to account for the perfection of the lien that creates something to be collected by a derivative claimant who has no privity of contract with either the original contractor or the owner.

▮ Morrell argues that appellate courts' opinions have continuing authority even when a party contends that a precedent was incorrectly decided. "Generally, we adhere to our precedents for reasons of efficiency, fairness, and legitimacy." *Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995). Such adherence promotes stability and gives due consideration to the settled expectations of litigants. *Id.* Accordingly, courts are reluctant to overrule decisions that have become ensconced in Texas jurisprudence. *See id.*

▮ Although the doctrine of *stare decisis* has its greatest force in the area of

statutory construction, the fact that the Legislature has·not changed the statute in response to a ruling does not justify continuing to apply a holding that is simply incorrect. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex.2006). Moreover, *Don Hill* appears to be an anomaly that has not become ensconced in Texas jurisprudence. Neither the Supreme Court nor the other intermediate appellate courts. have adopted the court's construction of Chapter 53 in *Don Hill. See, e.g., Morrell Masonry Supply, Inc. v. Loeb*, 349 S.W.3d 664, 669–70 (Tex.App.-Houston [14th Dist.] 2011, no pet.) (declining to apply *Don Hill* when owner received notice late); *Wesco Distrib., Inc. v. Westport Grp., Inc.*, 150 S.W.3d 553, 560–61 (Tex.App.-Austin 2004, no pet.) (declining to apply *Don Hill* to an action against original contractor). To the extent that *Don Hill* holds that a derivative claimant can perfect a lien without timely supplying all of the notices required by Section 53.056 of the Texas Property Code, it is overruled. *See Don Hill*, 790 S.W.2d at 809–11.

■ The summary judgment record established that Morrell failed to send a prelien notice to Comanche by the fifteenth day of the second month following the month in which Morrell delivered $14,021.08 in materials to Joyce's. Because Morrell failed to perfect its lien for the materials delivered to Joyce's in October 2008, the trial court did not err in denying Morrell's motion for summary judgment and in granting Lupe's motion for summary judgment on Morrell's fund-trapping claim.

### Retainage

■ Next, Morrell contends that the trial court erred in granting partial summary judgment on Morrell's claim for $14,021.08 against the statutory retainage. The owner is required to retain ten percent of the value of the work for thirty days after the work is completed. *See* Tex. Prop.Code Ann. § 53.101 (West 2007). The duty to hold retainage is imposed on the owner regardless of notice of the claim. *Sledge*, 653 S.W.2d at 286. If the owner fails to comply with the retainage statute, a claimant has a lien, at least to the amount that should have been retained. *See* Tex. Prop.Code Ann. § 53.105 (West Supp.·2011). A claimant has a lien on the retained funds if the claimant sends the notices required by Chapter 53 "in the time and manner required;" and files an affidavit claiming a lien not later than the thirtieth day after the date the work is completed. *See id.* § 53.103.

Morrell cites *Sledge* and *Don Hill* to support its argument that Morrell may recover from Lupe's under the retainage statute without having provided the two-month notice to Comanche. *See Sledge*, 653 S.W.2d at 286; *Don Hill*, 790 S.W.2d at 809–10. In *Sledge*, the original contractor was indebted to the subcontractors who filed lien affidavits. 653 S.W.2d at 287. When *Sledge* was decided, the retainage statute provided that "[w]here the claim consists of a lien claim arising from a debt incurred by the original contractor ... notice to the owner ... will be sufficient." Act of May 24, 1961, 57th Leg., R.S., ch. 382, 1961 Tex. Gen. Laws 863, 866 (repealed 1983). The successor statute, Section 53.056 of the Property Code, was amended in 1989 to require notice to the owner with a copy to the contractor when the debt is incurred by the original contractor. *See* Tex. Prop.Code Ann. § 53.056(c). As a supplier for a subcontractor, the subsection that applies to Morrell requires the claimant to give notice to the original contractor not later than the fifteenth day of the second month following the month in which the material was delivered. *See id.* § 53.056(b). The statute in effect when *Sledge* was decided had a similar provision with a shorter notice

period, but that subsection did not apply to *Sledge's* subcontractors' notice to the original contractor. *See Sledge,* 653 S.W.2d at 287–88 (citing former statute). *Sledge* acknowledged that "the question [whether the subcontractors perfected a lien] hinges on the notice requirements to perfect the lien." *Sledge,* 653 S.W.2d at 287.

*Don Hill* reasoned that because the only notice required to be given to the owner was the three-month notice, the subcontractor's failure to give the initial notice to the original contractor did not defeat the subcontractor's claim for recovery on the retainage. *Don Hill,* 790 S.W.2d at 810. As was the case with the fund-trapping statute, the court failed to consider that the owner's duty to retain ten percent of the contract price will not benefit a claimant who fails to perfect a lien. Accordingly, we have overruled *Don Hill* to the extent that it holds that a derivative claimant can perfect a lien without timely supplying all of the notices required by Section 53.056 of the Property Code. *See Don Hill,* 790 S.W.2d at 809–11. Because Morrell failed to perfect its lien for the materials delivered on behalf of Joyce's in October 2008, the trial court did not err in denying Morrell's motion for summary judgment and in granting Lupe's motion for summary judgment on Morrell's retainage claim.

### Bond

On February 9, 2009, Morrell filed an affidavit claiming a lien in the amount of $20,719.33 on the subject property. Comanche and Berkley later filed a bond in the amount of $41,438.66, or twice the amount of the claim, on October 29, 2009. *See* Tex. Prop.Code Ann. § 53.172 (West 2007). The principal and surety thereby acknowledged themselves bound to pay the claimant the amount of the lien claimed, up to an amount double that of the claim, "in the event same shall be proven to be a lien on the Property[.]"

Morrell petitioned to foreclose its claimed materialman's lien on the property. Lupe's moved for a summary judgment on the ground that Comanche's and Berkley's bond discharged any lien Morrell might have had on the property. In response, Morrell contended that it was possible that the trial court might grant Morrell a judgment in excess of the amount of the bond, and in that event, Morrell would not be limited to the amount of the bond on its claims against Lupe's.

On appeal, Morrell argues that the bond does not establish, as a matter of law, that Lupe's has no liability to Morrell on the October 2008 claim. Morrell's arguments contend only that the bond does not preclude Morrell from pursuing a personal judgment against Lupe's. *See Stolz v. Honeycutt,* 42 S.W.3d 305, 312 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (The purpose of the indemnity bond is to remove the lien from the property, but the bond does not supplant the underlying claim on which the lien is based.). Lupe's motion for partial summary judgment contends that the bond precludes only the action for foreclosure on the property. Morrell presents no argument or authority to support an argument that the trial court erred in holding that the indemnity bond precluded foreclosure on the property. We hold that the trial court did not err in summarily denying Morrell's petition for foreclosure on the real property secured by the indemnity bond.

### Trust Fund Claim

■ Morrell contends the trial court erred in granting summary judgment on Morrell's trust fund claim. Payments made to a contractor under a construction contract for the improvement of real property are trust funds. *See* Tex. Prop.Code Ann. § 162.001(a) (West Supp. 2011). Remedies under Chapter 162 are in addi-

tion to other remedies for suppliers and subcontractors in the Texas Property Code. *See Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 652 (Tex.2009) (holding the McGregor Act does not supply exclusive remedy for supplier for a public works project). The Trust Fund Act provides an affirmative defense when the trust funds that were not paid to the claimant were used to pay the trustee's actual expenses directly related to the construction of the improvement. *See* Tex. Prop.Code Ann. § 162.031(b) (West Supp. 2011).

Morrell argues a genuine issue of material fact exists regarding whether Lupe's paid Comanche after Lupe's received "timely notice" of Morrell's claim. This argument presupposes that Lupe's did not retain or divert funds, but paid the funds to Comanche, the original contractor on the contract. Lupe's motion for partial summary judgment asserted that it was entitled to judgment as a matter of law because the funds were utilized by the trustee for expenses directly related to the construction of the improvement. *See id.*

Morrell's summary judgment evidence included a record of a check from Lupe's to Comanche in the amount of $140,000 and dated February 13, 2009, and answers to interrogatories by Lupe's that establish that the total contract price was $1,651,373.47 and that Lupe's made the final payment to Comanche on March 13, 2009. Morrell alleged that on information and belief Lupe's had not retained ten percent of the contract price. The only reasonable inference from the summary judgment evidence is that Lupe's paid the retainage to Comanche. The funds were accordingly utilized for expenses directly related to the construction of the improvement. *See id.* Accordingly, the affirmative defense was established as a matter of law. The trial court did not err in grant-ing summary judgment on Morrell's Trust Fund claim. We overrule issue one.

## Attorneys' Fees

Morrell's remaining issues concern the award of attorneys' fees. Issue two is predicated upon Morrell's success on its first issue. *See generally Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex.App.-Dallas 2001, pet. denied) (reversing attorney fee award in light of remand on other issues). Having overruled Morrell's first issue, we also overrule the second issue.

■ Issue three contends that the trial court erred in awarding attorneys' fees under the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 2008). Issue four contends that the trial court erred in awarding attorneys' fees under the Fraudulent Lien Statute. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 12.002, 12.006 (West 2002 & Supp. 2011). Morrell does not challenge a third statutory basis for awarding attorneys' fees, Section 53.156 of the Property Code, although it was included in Lupe's pleadings and in the judgment. *See* Tex. Prop. Code Ann. § 53.156 (West Supp. 2011). The Texas Property Code permits the trial court to award reasonable attorneys' fees in a proceeding under the fund-trapping and retainage statutes, or in a proceeding to declare a lien or claim invalid or unenforceable in whole or in part. *Id.* Because Morrell does not challenge on appeal the trial court's award of attorneys' fees under Section 53.156 of the Property Code, any error in awarding attorneys' fees under Sections 12.002 or 37.009 of the Civil Practice and Remedies Code is harmless. *See Bluelinx Corp. v. Tex. Constr. Sys., Inc.*, 363 S.W.3d 623, 630–31 (Tex.App.-Houston [14th Dist.] 2011, no pet.). We overrule issues three and four.

■ Issue five contends that the trial court abused its discretion by award-

ing attorneys' fees in the amount of $32,452.93, with additional awards in the event of a successful appeal. Morrell contends the amount is excessive. The award of attorneys' fees rests in the sound discretion of the trial court and will not be reversed absent a clear showing of abuse of discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex.1985); *W. Tex. Rehab. Ctr. v. Allen*, 810 S.W.2d 870, 874 (Tex.App.-Austin 1991, no writ). An abuse of discretion in awarding attorneys' fees may be shown if there is insufficient evidence that the fees were reasonable and necessary, or if the award was inequitable or unjust. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998) (review of fee award under Declaratory Judgment Act). "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* In determining the reasonableness of a fee, a factfinder considers the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill [required] to perform the legal service properly;
>
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty

of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (quoting Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West Supp. 2011) (Tex. State Bar R. art. X, § 9)).

At trial, while counsel for Lupe's did not discuss the novelty and difficulty of the issue involved in the case, the skill required, the effect of the employment on foregoing other employment, the time limitations imposed, or the relationship between the firm and the client, Lupe's did establish the time and labor required by submitting counsel's itemized monthly invoices. Morrell complains that the invoices billed at the full hourly rate for both lawyers for the time two attorneys with the same firm spent conferring with each other. On November 23, 2009, lead counsel billed for one and one-half hours spent working on the case, including a conference with another lawyer with the firm, who billed for one-half hour for the conference. On December 4, 2009, lead counsel included a conference with a firm lawyer among several tasks he performed over two hours, while the other lawyer billed one-half hour for several tasks that included the conference. On December 7, 2009, lead counsel billed for three-fourths of an hour spent on the case, including a conference with another lawyer with the firm, who billed eight-tenths of an hour for the conference and for other work expended on the case. On January 6, 2010, lead counsel worked on the case for two hours, including a conference with a firm lawyer who also billed for eight-tenths of an hour of work that included the conference among other work performed on that day. It appears the two-lawyer billing that Morrell contends was unreasonable affected no

more than two and one-half hours of the total claimed.

Lead counsel for Lupe's testified that he has twenty-six years of litigation experience. His standard billing rate is $350 per hour. He stated that he is familiar with the fees customarily charged by attorneys in Montgomery County and the State of Texas for suits regarding lien claims. He identified three other attorneys and a paralegal who also worked on the case, and he stated that those persons had informed him of their rates and were customary in Montgomery County and the State of Texas. He expressed his opinion that the fees are reasonable and necessary for the services performed by his firm. The record shows that one of the lawyers charged approximately eight hours of time to the case at $400 per hour, but does not explain why that lawyer billed at a premium rate. The legal assistant billed an hourly rate of $150 for preparing and bates labeling documents for four-tenths of one hour.

Counsel for Morrell testified that $250 per hour is a reasonable rate in Montgomery County. On appeal, Morrell relies on a report of a State Bar survey to argue that Lupe's counsel's rates exceed the average for the locality.[2] This report was not presented to the trial court. The report suggests that counsel for Lupe's billed at an hourly rate that exceeds the median hourly rate reported by the respondents to the survey, but the trial court could have determined that Lupe's counsel had experience that justified an hourly rate that exceeded the median rate for the area.

Based on our review of the billing records, it appears counsel spent a substantial amount of time on a relatively short, uncomplicated motion for summary judgment. The text of Lupe's combined response to Morrell's motion for summary judgment and counter-motion for summary judgment is nine pages long. Except for two affidavits by counsel, the attachments to the motion are also submitted in Morrell's motion for summary judgment. In addition, counsel spent approximately seven hours working on a response to Morrell's first motion for summary judgment and between two and three hours working on a response to Morrell's second motion for summary judgment. No depositions were taken in the case, but counsel spent several hours working on interrogatories. Prior to trial, lead counsel billed for slightly over fifty hours of work on the case. Another lawyer with the firm billed approximately eight hours to the case. Morrell incurred fees in the amount of $21,266, which suggests that Morrell's counsel spent approximately eight-five hours working on the case.

Morrell argues the evidence supporting the attorneys' fee award is insufficient because the same counsel also represented Comanche and Berkley. Morrell contends that counsel failed to segregate the fees that relate to counsel's representation of each of the three parties. Comanche was not a party to this litigation but, counsel mailed the invoices to Comanche's president, so Comanche evidently had some responsibility to provide Lupe's defense of the case. The invoices include a $200 charge for a telephone conference with someone at Berkley, among other work performed by that lawyer on September 1, 2010, but otherwise the billing records describe the preparation of pleadings, motions, responses, and discovery that was filed for Lupe's, not Berkley. The trial court could reasonably have determined that the invoices reflected work that was

2. *See* State Bar of Texas, Department of Research & Analysis, 2009 Hourly Fact Sheet (2009), http://www.texasbar.com/AM/Template.cfm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240.

performed in pursuing Lupe's defense to Morrell's lawsuit.

Morrell argues that the excessive nature of the fee is demonstrated by comparing the $32,452.93 fee to the $14,021.08 claim on which Lupe's prevailed and to the $2,000 attorney's fee awarded to Morrell for prevailing on its $6,698.25 claim for the materials delivered in November 2008. The November 2008 invoices were not disputed, however, and the trial court could have considered that in making the fee awards. The trial court observed that "the fact that both sides have spent close to $60,000 on a $14,000 claim is ludicrous." However, the trial court also noted that the parties had acted within their rights in pursuing this litigation. Morrell continued to pursue its claims. Lupe's was compelled to continue to incur attorney's fees in defending its position. Although the trial court could reasonably have reduced the attorneys' fee award based upon the amount in controversy in relation to the effort expended, we cannot say the trial court acted unreasonably, arbitrarily, or without reference to guiding principles by awarding a fee for all of the work performed at the billed rate.

We hold that the trial court acted within its discretion in awarding attorneys' fees to Lupe's. Accordingly, we overrule issue five and affirm the trial court's judgment.

AFFIRMED.