**Affirmed and Opinion Filed July 1, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00122-CV

**ADDISON URBAN DEVELOPMENT PARTNERS, LLC, Appellant**
**V.**
**ALAN RITCHEY MATERIALS COMPANY, LC, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-03902-C**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice FitzGerald

This appeal follows a bench trial involving a dispute over a statutory construction materials lien. In eight issues, Addison Urban Development Partners, LLC ("Addison") asserts the trial court erred in awarding judgment to Alan Ritchey Materials Company, LC ("Ritchey"). We affirm the trial court's judgment.

## BACKGROUND

Addison owns the real property known as the Meridian Square Project (the "Property"), a subdivision development in Addison, Texas. Addison contracted with ForceCon Services, LLC ("ForceCon") for paving, excavation, street lights, and other work in constructing improvements on the Property (the "Project"). Pursuant to its contract with Addison, ForceCon provided concrete for use on the Project.

Concrete consists of several materials, including sand and gravel. ForceCon ordered ingredients for concrete from several materialmen, and prepared the concrete for use in the Project through a process called "batching." ForceCon was forced to batch concrete for the Project at an off-site batch plant because Addison limited ForceCon's workspace in its paving subcontract. Addison knew its concrete was not being batched on the Project site.

Ritchey is one of the materialmen that contracted with ForceCon to supply materials to make concrete for the Project. The materials to be provided included concrete sand and 1" and 1 1/2" rock gravel.[1] Pursuant to the contract, ForceCon was to pay a unit price per ton of material delivered for the Project. This unit price included a fuel surcharge that was tied to a price index related to diesel fuel. Variations in the fuel surcharge would cause the final per-ton price of the delivered material to increase or decrease.

ForceCon ordered materials from Ritchey from July 22, 2009 through September 11, 2009 for a total price of $114,470.66. Despite demands for payment, Ritchey was not paid for any of these materials. Therefore, Ritchey provided statutory notice to ForceCon and Addison concerning ForceCon's failure to pay. Ritchey then filed a lien in the total amount of $114,470.66, and notified Addison of the filing.

Addison initiated this lawsuit against Ritchey, ForceCon, and another subcontractor. With regard to Ritchey, Addison claimed that the total value of the materials used on the Project had a total contract value of $65,155.67, and Ritchey's $114,470.66 lien on the Project exceeded that amount. Ritchey answered and counterclaimed against Addison for foreclosure of the lien and cross-claimed against ForceCon for breach of contract and a sworn account. The parties were subsequently realigned, with Ritchey designated as plaintiff and Addison as defendant. The

---

[1] As do the parties, in this opinion we use the terms "rock," "rock gravel," and "gravel" interchangeably to refer to the aggregate Ricthey provided for the Project.

claims between the other subcontractor and Addison were settled at mediation, and the court granted a default judgment in favor of Ritchey against ForceCon. Thus, only Ritchey's claims against Addison remained.

The parties filed a joint trial stipulation of facts and a stipulation of evidence. The parties also filed a document entitled "Agreed Motion for Procedure for Resolution Based Upon Joint Trial Stipulations." The motion requested that the court admit the stipulated evidence, and set deadlines for briefing on the stipulated evidence and the submission of attorney's fees affidavits. The trial court granted the motion and admitted the stipulated evidence.

The court signed a final judgment on October 31, 2012. The judgment incorporates the interlocutory default judgment awarding Ritchey judgment against ForceCon, and awards Ritchey attorney's fees against ForceCon. The judgment further awards Ritchey $114,470.66, plus pre- and post-judgment interest jointly and severally against Addison and ForceCon, and attorney's fees against Addsion. The judgment concludes that Ritchey's lien against the Property is valid and enforceable, and decrees that judgment foreclosing the lien is granted. Addison moved for a new trial, and the trial court made findings of fact and conclusions of law.

## STANDARD OF REVIEW

Before we begin our analysis, we must first determine the standard of review. Addison asserts this case was submitted to the trial court as an agreed case under rule 263. *See* TEX. R. CIV. P. 263. Ritchey disagrees, arguing that the parties did not agree to all the facts. Ritchey relies on two items that purportedly support its position; a single sentence from the stipulation that states "Ritchey contends that . . . materials were ordered and delivered for use on the project" and the fact that Addison raises factual sufficiency points on appeal. We are not persuaded by Ritchey's argument. The case was submitted to the court on the parties' joint trial stipulation and the stipulated evidence. The joint trial stipulation presented to the court states, in

pertinent part, "[w]ith these stipulations, Alan Ritchey Materials and Addison believe that all that remain are issues of law." In addition, the parties' agreed motion for resolution based on joint trial stipulations states, "[with the exception of attorney's fees, to be submitted at a later date], the parties believe that all evidence . . . needed for adjudication of this matter is now before the Court."

"An agreed statement of facts under rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law." *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ denied) (citing *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 634 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). In a rule 263 agreed case, the only issue on appeal is whether the district court properly applied the law to the agreed facts. *See id.*; *Chiles*, 858 S.W.2d at 635. In such a case, this Court is limited to consideration of those agreed facts. *See Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 866 (Tex. App.—Houston 2010, no pet.). Such a review is less deferential to the trial court, because a "trial court has no discretion in deciding what the law is or in properly applying it." *Kessler*, 932 S.W.2d at 735 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). If the trial court files findings of fact in an agreed case, they are disregarded by the appellate court. *Davis v. State*, 904 S.W.2d 946, 950 (Tex. App.—Austin 1995, no writ). Rule 263 provides in its entirety:

> Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.

TEX. R. CIV. P. 263. Although the record does not contain an "agreed statement signed and certified by the [district] court to be correct," courts have concluded that strict compliance with rule 263 is not a prerequisite for an agreed case. *See Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.*, 784 S.W.2d 122, 125 (Tex. App.—Austin 1990, writ

denied) (citing *Reed v. Valley Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.)); *Henry S. Miller Co. v. Wood*, 584 S.W.2d 302, 303 (Tex. Civ. App.—Texarkana 1979), *aff'd*, 597 S.W.2d 332 (Tex. 1980); *see also Kessler*, 932 S.W.2d at 735 (stating appellate court may treat case as involving an agreed statement of facts if the record indicates the trial court heard the case on stipulated facts).

The record before us reflects that this case was submitted as an agreed case. We structure our review accordingly.

## ANALYSIS

Addison raises eight issues challenging the trial court's judgment. Specifically, Addison asserts: (1) the evidence is legally and factually insufficient to establish that material was furnished; (2) the lien was limited to sand and does not include a fuel surcharge, and therefore Ritchey failed to establish that its lien affidavit created a valid lien; (3) the evidence is legally and factually insufficient to establish that Addison did not comply with its obligation for retainage; (4 & 5) Ritchey's lien claim was not enforceable as to the freight charges or any item other than concrete sand; (6) the judgment cannot be upheld on the theory that ForceCon was Addison's agent or had apparent authority or that Addison failed to pay Ritchey's demand after thirty days; (7) because the judgment should be reversed, it is not equitable and just to award attorney's fees; and (8) the trial court erred in denying Addison's motion to remove the invalid lien. Because issues 1, 2, 4, and 5 all pertain to the validity of the lien, we consider these issues together.

### *The Validity of the Lien*

Ritchy claimed it was entitled to a statutory mechanic's or materialman's lien under section 53.021 of the property code because it furnished labor or materials for construction of

improvements pursuant to a contract with Addison's subcontractor, ForceCon. Section 53.021

provides:

> Persons Entitled to a Lien.
>
> (a) A person has a lien if:
>
> (1) the person labors, specially fabricates material, or *furnishes labor or materials* for construction and repair in this state of:
>
> (A) a house, building, or improvement . . .  and
>
> (2) the person labors, specially fabricates the material, or *furnishes the labor or materials* under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor.

TEX. PROP. CODE ANN. § 53.021 (West Supp. 2013) (emphasis added). A claimant is required to

provide a pre-lien notice of unpaid balances to the original owner or reputed owner and the

original contractor. *See* TEX. PROP. CODE ANN. § 53.056 (West 2007). When a supplier notifies

an owner that it has not been paid, the owner may protect itself by withholding payments due to

the contractor in an amount sufficient to pay the supplier's claim. TEX. PROP. CODE ANN. §

53.081 (West 2007); *Page v. Marton Roofing, Inc*., 102 S.W.3d 733, 734 (Tex. 2003). If the

owner elects to withhold funds due to the contractor (called "trapped funds"), it must hold the

funds until the time for filing a lien is passed, or, if a lien is filed, until the lien has been satisfied

or released. *See* TEX. PROP. CODE ANN. § 53.082 (West 2007); *Raymond v. Rahme*, 78 S.W.3d

552, 559–60 (Tex. App.—Austin 2002, no pet.) (discussing trapped and retained funds). If the

owner fails to withhold funds from the contractor, "the owner is liable and the owner's property

is subject to a claim for any money paid to the original contractor after the owner was authorized

to withhold funds." TEX. PROP. CODE ANN § 53.084(b) (West 2007); *Page*, 102 S.W.3d at 734–

35.

After giving notice of the claim, to obtain a valid lien, a party must file an affidavit

within the statutorily prescribed period. *See* TEX. PROP. CODE ANN. §§ 53.052, 53.056. The

required contents of a lien affidavit are prescribed in section 53.054(a) of the property code. *See*

TEX. PROP. CODE ANN. § 53.054(a) (West 2007). Under section 53.054, an affidavit must contain

substantially:

> (1) a sworn statement of the amount of the claim;
>
> (2) the name and last known address of the owner or reputed owner;
>
> (3) a general statement of the kind of work done and materials furnished by the claimant and, for a claimant other than an original contractor, a statement of each month in which the work was done and materials furnished for which payment is requested;
>
> (4) the name and last known address of the person by whom the claimant was employed or to whom the claimant furnished the materials or labor;
>
> (5) the name and last known address of the original contractor;
>
> (6) a description, legally sufficient for identification, of the property sought to be charged with the lien;
>
> (7) the claimant's name, mailing address, and, if different, physical address; and
>
> (8) for a claimant other than an original contractor, a statement identifying the date each notice of the claim was sent to the owner and the method by which the notice was sent.

*Id.* A party must comply with chapter 53 to perfect a lien under the statute. *See Morrell Masonry*

*Supply, Inc. v. Lupe's Shenandoah Reserve, LLC*, 363 S.W.3d 901 (Tex. App.—Beaumont 2012,

no pet.); *see also* TEX. PROP. CODE ANN. §§ 53.01–.058. Substantial compliance, however, is

sufficient. *See First Nat'l Bank v. Sledge*, 653 S.W.2d 283, 285 (Tex. 1983); *Hammons v. Tex.*

*Pride Landscape*, No. 05-99-00980-CV, 2000 WL 567108, at *6 (Tex. App.—Dallas May 10,

2000, pet. denied) (not designated for publication).

In the stipulated facts, Addison admits that it received and does not dispute the timeliness

or contents of the notices (of the unpaid balances) or the timeliness of the filing of the liens and

notices of the liens. Addison further admits that Ritchey properly trapped funds for the full

amount of its $114,470.66 claim. The stipulated facts also provide that if Ritchey's notices and

liens were sufficient to perfect a claim, in whole or in part, Addison is liable to Ritchey and Addison's property is subject to Ritchey's claim for the amount claimed in the lien or such lesser amount that may be perfected plus interest and attorney's fees. In addition, the stipulated facts state:

> By way of example, and for avoidance of doubt, if [Ritchey] is entitled to a lien for all of the materials set forth in the Invoices marked Exhibit No. 17, [Ritchey] is entitled to recover that full amount from Addison and Addison's property is subject to the full amount of the claim. On the other hand, to the extent any of the materials set forth in the Invoices . . . are not properly the subject of a lien . . . Addison is not liable and its property is not subject to the lien to such extent.

Therefore, as Addison observes, while "there is no dispute as to notice . . . the parties left open the question of how much of the account debt was enforceable as a lien." In other words, the crux of the legal determination made by the trial court and the basis of our review concerns the validity and perfection of the lien.

Addison advances two challenges to the validity and perfection of the lien. First, Addison contends the lien is not valid because materials were not "furnished" for the Project. Next, Addison argues that the lien is not valid because it was perfected only as to concrete sand and should not include the rock gravel or associated freight and fuel charges Ritchey included in its claim.

### *Were Materials Furnished for the Project?*

Addison's argument that materials were not furnished for the Project is premised on the fact that more materials were delivered than were required to complete the job. Addison notes that the quantity of materials supplied exceeded the amounts required by the job by a factor of nearly four times. This excess is not in dispute. According to Addison, the excess materials cannot reasonably be described as surplus or the result of imprecise estimates. Instead, Addison posits that ForceCon used the account to benefit from a fixed price on the materials, and suggests

that the excess materials "must have been used on some other project . . . or remained unused at the location where they were delivered."

The parties differ on whether this delivery of excess materials defeats the conclusion that the materials were "furnished" for the Project. The statute does not define the term "furnished" or the phrase "furnished for construction." *See* TEX. PROP. CODE ANN. § 53.001 (West 2007). There is well-established authority, however, that the statute requires a materialman to prove he "furnished goods . . . for a specific job." *See Lexicon, Inc. v. Gray*, 740 S.W.2d 83, 86 (Tex. App.—Dallas 1987, no writ); *Houston Fire & Cas. Ins. Co. v. Hales*, 279 S.W.2d 389, 392 (Tex. Civ. App.—Eastland 1955, writ ref'd n.r.e.). The question is whether the stipulated facts show this standard was met.

In *Lexicon*, the trial court held that a roofing company was entitled to a lien on a recently constructed hotel based upon unpaid bills from the roofing subcontractor for the builder of the hotel. *Lexicon*, 740 S.W.2d at 86. The trial court did not make any findings of fact or conclusions of law. *Id.* This Court noted that the burden of proof is on the materialman to prove delivery of the goods to the construction site or that he furnished the goods to the builder for a specific job. *Id.* In reviewing the trial court's implied findings in support of the judgment, we centered our analysis on whether the evidence supported a finding that the roofing company furnished materials for the construction of the hotel. *Id.* Because invoices showing the deliveries of materials to the job site were admitted into evidence, we concluded the trial court did not err in holding the owner of the property liable for the materials sold by the roofing company and delivered to the job site. *Id*. at 85–86. In so concluding, we noted that the Texas Supreme Court has stated:

> The language of the statute does not require . . . that the material should actually enter into the construction of the improvement. To furnish materials for the construction of a house and to furnish materials which enter into its construction are very different things. To give our statute the

> latter construction is to strain its words beyond their usual meaning, and this should not be done for the purpose of depriving mechanics and others of the protection which the statute was evidently designed to give them. We rather incline to a liberal construction in their favor.

*Id*. at 85 (citing *Trammel v. Mount*, 4 S.W. 377, 378 (Tex. 1887)).

Similarly, in *Hales*, the Eastland court concluded that a materialman's lien arises even if the material does not actually enter into the construction, unless the builder actually "turns back" the material to the materialman. *Hales*, 279 S.W.2d at 392–93; *see also Brick & Tile, Inc. v. Parker*, 186 S.W.2d 66, 67 (Tex. 1945) (stating materialman's lien cannot be defeated by proof the buyer used part of the material for other purposes); *Sheldon Pollack Corp. v. Pioneer Concrete*, 765 S.W.2d 843, 846 (Tex. App.—Dallas 1989, writ denied) (concluding materialman not required to prove actual consumption of materials on private project to recover against general contractor on indemnity bond).

Addison advances an application of the statute requiring proof that the materials were actually used for the Project. To this end, Addison argues that our determination should be guided by the decision in *Morrell Masonry Supply, Inc. v. Scott Griffin & Assocs., Inc.*, No. 01-09–01147-CV, 2011 WL 2089677, at *6 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op.).[2] In *Morrell*, the owner, SGA, hired a contractor, Ruiz, to install stucco on two houses, one at 10 Oak Cove Lane, and the other at 30 Oak Cove Lane. *Id*. at *1. At the time, Ruiz was doing work on three other projects for another owner, all on Oak Cove Lane. An issue arose with regard to Ruiz not paying the supplier for stucco that was used for 30 Oak Cove Lane. *Id*. The parties resolved this dispute. But as a result of these problems, SGA required that the supplier contact it for approval before supplying material that Ruiz claimed was for SGA job sites. *Id*.

---

[2]  In its reply brief, Addison offers an alternative application, urging that when the quantity of materials provided "grossly exceeds" the usable quantity, materials should be deemed "furnished" to the extent the materials are delivered to the contractor or the job site in "quantities reasonably necessary for the ordering contractor's performance." Addison offers no support for this interpretation of "furnished" under the statute, and we reject it. Such a construction engrafts an additional burden for a materialman to prove quantities necessary for performance and exceeds the proof required under the statute.

Another dispute subsequently arose, and the supplier claimed Ruiz had not paid for materials used on the project at 10 Oak Cove Lane. The supplier filed a lien on the property and filed suit to foreclose the lien. *Id.*

The trial court concluded, *inter alia,* that the supplier did not prove that the materials furnished to the contractor were delivered to a particular builder for a particular construction job. *Id.* at *7. On appeal, the supplier relied on *Lexicon* to argue that the trial court erred in shifting the burden of proof to the supplier by requiring it to prove that the materials were delivered, used, and signed for by the owner at the 10 Oak Cove job site. *Id.* at *4. SGA argued that *Lexicon* was distinguishable because it did not involve alternative job sites where the materials could have been used by the contractor. *Id.*

The Houston Court of Appeals agreed with SGA, stating with regard to *Lexicon*, that "the posture of this case is different." *Id.* at *6. The court observed, "[h]ere, the question is whether 'some evidence' supports the trial court's conclusion that [the supplier] was *not* entitled to a lien because [the supplier] did not establish that (1) materials were delivered to [the specific job site] or (2) materials were furnished for use in the job at [the specific job site]." *Id.* (emphasis in original). The court concluded that there was some evidence to support the trial court's conclusion that the supplier was not entitled to a lien. *Id.*

In reaching its conclusion, the court noted that the supplier relied on invoices, delivery tickets, and the testimony of its officer manager to support its contention that it was entitled to a lien. But the court noted that many of the delivery tickets listed "will call" as the shipment method, several had no signature as being received, and many had illegible signatures or markings. *Id.* The office manager could not identify any of the signatures as belonging to Ruiz or SGA, and stated that the orders were confirmed as being for the 10 Oak Cove project "a majority of the time." Conversely, the owner testified that he only received confirmation calls between

three and five times, and only two of the delivery tickets indicated that the owner was contacted. *Id.* This conflicting evidence was critical to the court's determination. Significantly, the court stated:

> **We do not hold that delivery tickets and invoices indicating materials were for a particular job site is not some evidence to support a lien. But such evidence is not conclusive in the face of contradicting evidence**. Here the trial court was presented with evidence casting real doubt about where the material went, as well as testimony that [the supplier] was on notice of SGA's contention that Ruiz was erroneously designating SGA's job sites and that [the supplier] had agreed not to accept Ruiz's word that materials were to be used at an SGA site without verifying that fact with SGA.

*Id*. at *6. (emphasis added).

The facts in *Morrell* are distinguishable from the case at bar, and this distinction is critical to our inquiry. Here, the controlling facts are not in dispute. The parties stipulated that the materials made the subject of Ritchey's claim were all delivered to a batch plant operated by ForceCon, and Addison knew the materials were not being batched on the Project site. The stipulated evidence shows that each time ForceCon ordered materials from Ritchey, it specified that the materials were for the Project. Addison created a dispatch sheet for each order documenting the type and quantity of material ordered and the project for which it was being provided. Ritchey assigned order numbers 1211, 1216, and 1220 to the orders placed by ForceCon, and these order numbers identified the materials (concrete sand, 1" and 1 1/2" rock gravel) and the Project. At delivery, Ritchey presented delivery tickets reflecting the types of materials delivered, the amount, and that the materials were for use on the Project. A ForceCon representative acknowledged receipt of these delivery tickets. The invoices for the materials ordered reference the delivery tickets and also designate the Project by name. In the present case, there is no evidence that the materials delivered were used at another job; Addison's theory concerning ForceCon's use of the excess materials is but conjecture. Therefore, unlike *Morrell*,

there is no evidence controverting that the materials were furnished for the Project. On the facts in this case, the evidence demonstrates that Ritchey delivered materials to ForceCon in connection with the Project.

Moreover, there is nothing to suggest the legislature intended the additional burden on materialmen that Addison seeks to impose. As we previously noted, the legislature did not define the word "furnish" as it pertains to section 53.021. Where the legislature does not provide a definition for a term in a statute, it is a cardinal rule of statutory construction that the words employed in statutes are ordinarily given their plain meaning unless a contrary meaning is apparent from the statute's context. *See City of Houston v. Bates,* 406 S.W.3d 539, 543–44 (Tex. 2013). Further, the legislature has stated that words and phrases used in a statute should be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (West 2013).

According to Black's Law Dictionary, the word "furnish" means "to supply, provide, or equip, for accomplishment of a particular purpose." BLACK'S LAW DICTIONARY 675 (6th ed. 1990). Webster's defines "furnish" as to "supply or give." WEBSTER'S NEW COLLEGIATE DICTIONARY 462 (1981). It seems clear through these definitions that the plain meaning of the word "furnish," in the context of furnishing materials for a specific job, involves supplying the materials and nothing more. The definitions in no way suggest that furnishing or supplying materials for a project equates to or entails actual use of such materials. *See Trammel*, 4 S.W. at 378 (furnishing materials for construction differs from furnishing materials that enter into construction). We are also mindful of the fact that the lien statute "is to be liberally construed for the purpose of protecting laborers and materialmen," so as to afford "the most comprehensive application" without "doing violence" to the statute's terms. *Wesco Distrib., Inc. v. Westport Grp, Inc.*, 150 S.W.3d 553, 557 (Tex. App.—Austin 2004, no pet.). Limiting the word "furnish"

and the phrase "furnished for construction" to reflect the common meaning is consistent with this purpose and result.

***Is the Lien Invalid Because it is Not Limited to Concrete Sand?***

Next, we consider Addison's challenge to the perfection of the lien based on its contention that the lien was perfected only as to concrete sand. Ritchey's lien affidavits stated:

> Claimant's labor and materials furnished for construction of improvements on the real property described below are generally described as concrete sand and related freight charges (including applicable fuel surcharges).

According to Addison, the description in the affidavit does not encompass gravel, another aggregate supplied by Ritchey to mix the concrete.

Section 53.054 requires that an affidavit claiming a materialman's lien include "a general statement of the kind of work done and materials furnished by the claimant." TEX. PROP. CODE ANN. § 53.054. However, the statute also provides that "[t]he affidavit is not required to set forth the individual items of work done or material furnished or specially fabricated." *Id*. § 53.054(c).

Generally, the mechanic's and materialman's lien statutes are liberally construed for the purpose of protecting laborers and materialmen. *See First Nat'l Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262, 269 (Tex. 1974). Thus, for purposes of perfection, only substantial compliance with the statutes is required. *See Occidental Neb. Fed. Sav. Bank v. E. End Glass Co.,* 773 S.W.2d 687, 688 (Tex. App.—San Antonio 1989, no writ); *Mustang Tractor & Equip. Co. v. Hartford Accident & Indem. Co*., 263 S.W.3d 437, 440 (Tex. App.—Austin 2008, pet. denied).

The purpose of serving lien affidavits on the property owner is to give notice. *Arias v. Brookstone*, L.P., 265 S.W.3d 459, 464–65 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The lien is to be recorded to give fair notice to third parties of that for which a lien is claimed. *See Haden Co., Inc. v. Mixers, Inc*., 667 S.W.2d 316 (Tex. App.—Dallas 1984, no writ). Cases

interpreting the mechanic's and materialman's lien statutes counsel against invalidating a lien on a purely technical basis. Courts are more willing to excuse a mistake or omission where no party is prejudiced by the defect. *Ready Cable, Inc. v. RJP S. Comfort Homes, Inc.*, 295 S.W.3d 763, 765 (Tex. App.—Austin 2009, no pet.). Therefore, we consider Ritchey's lien affidavit in terms of whether it substantially complied with the statute.

The evidence reflects that concrete sand and gravel are known components of prepared concrete, and there is no dispute that both gravel and sand were required for the concrete that was to be batched for the Project. The parties stipulated that ForceCon ordered sand and 1" and 1 1/2" aggregate and these materials were delivered to ForceCon's batch plant. Despite the general description in the lien affidavits, Ritchey's notices and demands to Addison and ForceCon specified that Ritchey had provided both sand and gravel. These notices advised, "Claimant furnished concrete sand, rock, and related transportation for the Project under Claimant's agreement with ForceCon . . . ."

We conclude the trial court did not err in concluding that the affidavits substantially complied with the statute. There was no dispute that the aggregate materials for concrete had been delivered, and there is nothing to suggest that Addison or any third party was surprised or suffered prejudice by reason of Ritchey's general description of the aggregate in the affidavit. As the Corpus Christi court aptly observed, "[t]he Legislature did not intend that the materialman should lose his lien through the technicalities of a warning, where the owner was not misled to his prejudice." *Hunt Developers*, *Inc. v. W. Steel Co.*, 409 S.W.2d 443, 449 (Tex. Civ. App.—Corpus Christi 1966, no writ).

Finally, Addison contends the lien improperly included freight and fuel surcharges because these items are not "materials" under the property code. Section 53.001 defines "material" as all or part of

(A) the material, machinery, fixtures or tools incorporated into the work, consumed in the direct prosecution of the work, or ordered and delivered for incorporation or consumption . . .

(C) power, water, fuel, and lubricants consumed or ordered and delivered for consumption in the direct prosecution of the work.

TEX. PROP. CODE ANN. § 53.001(4). Ritchey asserts that the freight or delivery was factored into the price of the materials sold, and it was therefore entitled to the lien price of the "material ordered and delivered for consumption" and "fuel consumed" in connection with the Project. We agree.

The record reflects that Ritchey charged by the ton for the materials delivered to the Project. The invoices show the components of the final price — material, freight, and fuel surcharge. These components comprise the total cost per ton.

The final price of the materials is based on the weight of the material, not the delivery distance. The weight is multiplied by the estimated material and freight components of the delivered price of the material during the bid process. The fuel charge is expressed as a percentage, and calculated from the freight component of the delivered price. The fuel surcharge is acquired from an index and is based on the variable rate of diesel fuel from the time the bid is placed to the time the material is ordered.

Ritchey demonstrated that all three components (materials, freight, and fuel surcharge) are added together to arrive at the final invoiced price of the material. The price charged is calculated by multiplying the tons of material delivered by the component rates for that material and freight. An additional percentage is then applied to the freight portion to obtain the fuel surcharge. The material and freight components are broken out on the invoices so that customers can track the proper application of the fuel surcharge. Ritchey does not categorize the freight value as a shipping charge, nor is it based on mileage. This evidence establishes the components of that which was consumed in the direct prosecution of the work, or ordered and delivered for

incorporation or consumption. Thus, the evidence shows that the component items of the final price were properly included in the lien price.

Addison insists that freight is not an item of material or labor under the property code. Although the property code does not include the word freight, the statute does provide a lien for labor and materials consumed in providing materials. *See* TEX. PROP. CODE ANN. § 53.021 (providing lien for labor furnished); TEX. PROP. CODE ANN. § 53.023 (securing payment for labor done or material furnished). The statue defines "labor" as "labor used in the direct prosecution of the work." TEX. PROP. CODE ANN. § 53.001(3). Even if the fuel surcharge is deemed something other than a component of the price of the material supplied, diesel is consumed in providing the materials. And the delivery of these materials can be properly categorized as labor used in the direct prosecution of the work.

This Court rejected a similar argument concerning the inclusion of delivery charges in a lien in *Hammons v. Texas Pride Landscape*, No. 05-99-00980-CV, 2000 WL 567108, at *6-7 (Tex. App.—Dallas May 10, 2000, pet. denied) (not designated for publication). In *Hammons*, a subcontractor who had been hired to do landscaping on a project filed liens for the work it had done, including delivery charges, labor in planting the plants and the clean-up of the realty, and rental of a dumpster. The owner argued that the costs of labor and the dumpster rental were not properly costs to which a materialman's lien might attach. *Id*. at *8. Our Court disagreed, and concluded that these charges, including the cost of labor for delivery, were properly included in the lien's total amount. *Id*.; *see also Lyda Swinerton Builders, Inc. v. Cathay Bank,* 409 S.W.3d 221, 241 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (noting that definition of materials does not always include actual use or consumption in direct prosecution of the work; liens also available when items are "delivered for" use or consumption).

Based on the foregoing, we conclude the trial court did not err in concluding that the lien was valid and properly perfected. Materials were furnished for the Project, and the rock gravel and associated freight charges were properly included in Ritchey's lien claim. Addison's first, second, fourth, and fifth issues are overruled.

*Retainage*

In its third issue, Addison asserts the evidence is insufficient to support the conclusion that Addison failed to comply with its obligation for retainage.[3] Although Ritchey asserted a cause of action based upon Addison's breach of a duty to withhold retainage, the trial court did not reach this issue. The parties stipulated that Ritchey properly trapped funds and Addison was liable to the extent the lien was valid and perfected as to all charges claimed in the lien. We have concluded the trial court did not err in concluding Ritchey's lien was valid, and that the judgment should be affirmed on this theory. Addison's third issue is overruled.

*Agency and Apparent Authority*

In its sixth issue, Addison contends the judgment cannot be upheld under an agency or apparent authority theory or because it failed to pay Ritchey's demand after thirty days. We have already concluded that the judgment should be affirmed on the theories that were actually tried. Therefore, we need not consider any alternative grounds challenging the judgment. Addison's sixth issue is overruled.

*Attorney's Fees*

In its seventh issue, Addison challenges the award of attorney's fees. The only basis for this challenge is Addison's assertion that the fees are not equitable and just because they are based on an improper judgment. We have concluded that the trial court's judgment in favor of

---

[3] "Retained" funds are funds withheld from the original contractor either under a contractual agreement or section 53.101, which requires a property owner to retain ten per cent of the contract price for thirty days after the project is completed. *Raymond*, 78 S.W.3d at 560; TEX. PROP. CODE ANN. §§ 53.025, 53.101 (West 2007).

Ritchey is not error. Consequently, the trial court did not err in awarding Ritchey its reasonable attorney's fees. *See* TEX. PROP. CODE ANN. § 53.156.  Addison's seventh issue is overruled.

### *Summary Motion to Remove Invalid Claim*

In its eighth issue, Addison argues the trial court erred in denying its motion to remove an invalid claim. Section 53.160(a) of the property code provides:

> (a) In a suit brought to foreclose a lien or to declare a claim or lien invalid or unenforceable, a party objecting to the validity or enforceability of the claim or lien may file a motion to remove the claim or lien. The motion must be verified and state the legal and factual basis for objecting to the validity or enforceability of the claim or lien. The motion may be accompanied by supporting affidavits.

TEX. PROP. CODE ANN. § 53.160(a) (West Supp. 2013). The statute further provides that "the grounds for objecting to the validity or enforceability of a claim or lien for purposes of the motion are limited to the following: (1) notice of claim was not furnished to the owner or original contractor . . . (2) an affidavit claiming a lien failed to comply with Section 53.054  or was not filed as required by Section 53.052; (3) notice of the filed affidavit was not furnished to the owner or original contractor as required by Section 53.055; (4) the deadlines for perfecting a lien claim for retainage under this chapter have expired . . . (5) all funds subject to the notice of the claim to the owner and a notice regarding the retainage have been deposited in the registry of the court . . . (6) when the lien affidavit was filed on homestead property . . . no contract was executed or filed . . . or the affidavit claiming a lien failed to include the notice as required . . . or the notice failed to include the statement required; and (7) the claimant executed a valid and enforceable waiver or release of the claim or lien claimed in the affidavit." TEX. PROP. CODE ANN. § 53.160(b).

Thus, the statute expressly provides authority for the trial court to hear a summary motion to remove a lien that is based on any one of the grounds set out in subsection (b). *See id.* If the

trial court determines that the movant is entitled to removal of the lien, the trial court has authority to "enter an order removing the lien claimed in the lien affidavit." *See* § 53.160(e).

Here, Addison's motion asserted that Ritchey failed to comply with section 53.054 because it failed to prove it furnished materials for the project. Addison further asserted the lien should be removed because Ritchey filed three duplicative lien affidavits. Filing duplicative lien affidavits is not a basis for removal under the statute. *See id.* And we have concluded that Ritchey did prove it furnished materials for the project. Accordingly, the trial court did not err in denying Addison's motion to remove the lien. Addison's eighth issue is overruled.

Having resolved all of Addison's issues against it, we affirm the trial court's judgment.

130122F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADDISON URBAN DEVELOPMENT
PARTNERS, LLC, Appellant

No. 05-13-00122-CV      V.

ALAN RITCHEY MATERIALS
COMPANY, LC, Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-10-03902-C.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ALAN RITCHEY MATERIALS COMPANY, LC recover its costs of this appeal from appellant ADDISON URBAN DEVELOPMENT PARTNERS, LLC.


Judgment entered July 1, 2014