

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00022-CV

DENCO CS CORPORATION, Appellant

V.

BODY BAR, LLC, Appellee

On Appeal from the 429th District Court
Collin County, Texas
Trial Court No. 429-01020-2013

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Body Bar, LLC, desired to open an upscale Pilates studio and juice bar in Plano, Texas.[1] Toward that aim, Body Bar entered into a lease for commercial property owned by Regency Centers, L.P., the lease acknowledging that it would be Body Bar's responsibility to construct the studio within the demised space and providing that Regency would pay $25,000.00 of the cost of doing so after the successful completion of the construction project. Body Bar had its plans and specifications for the improvements drafted by an outside consultant and included those plans and specifications in its advertisement for bids to accomplish the work. Denco CS Corporation responded to the advertisement for bids and was awarded the contract for the improvements as Body Bar's contractor. On March 25, 2012, Denco and Body Bar entered into a contract to complete the project.

Denco's completion of the project was delayed, in part, due to the city's determination that portions of the plans and specifications for the project failed to meet the city's health code. In order to complete the project with as little delay as possible, Denco's crewmen worked overtime and on weekends, thereby increasing Denco's cost for the project by $28,933.40. Denco attempted to pass this cost along to Body Bar via an e-mail request for additional sums. Believing that its contract with Denco did not obligate it to pay more on the contract due to Denco's decision to employ crewmen outside of normal business hours, Body Bar—which had paid each contractually prescribed invoice Denco submitted—did not acquiesce to Denco's

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

request for additional sums. In response, Denco took the steps it felt were necessary to perfect contractor's liens under both the statutory scheme and the Texas constitutional contractor's lien on the property it had improved. These liens were supported by the affidavit of Denco's Director of Construction, Steven J. Smith, and stated, in part, that "the amount of $28,933.40 . . . remains unpaid and is due and owing to [Denco] under its agreement with Body Bar."[2]

Some two months after Denco and Body Bar entered into the construction agreement, Regency sold the premises to Bre Throne Preston Park, LLC, which purchased the property subject to Body Bar's lease and the obligations of the landlord thereunder—including the responsibility of the lessor to reimburse Body Bar $25,000.00 of the cost of the improvements it made to the property. When Bre Throne discovered the existence of the lien affidavits filed by Denco, it withheld its reimbursement to Body Bar of the $25,000.00 specified in the lease agreement. When Bre Throne refused to pay the reimbursement, Body Bar filed suit against Denco.

In its suit seeking declaratory relief, Body Bar's petition (1) set out the existence of the contractual relationship into which it had entered with Denco; (2) alleged that Denco had breached its contract with Body Bar by requesting additional sums not contemplated to be paid by Body Bar under the contract; (3) requested the trial court to declare that the affidavits filed by Denco did not effectuate liens on the improved property because (a) Denco failed to provide the required statutory notice, (b) Denco failed to file its lien affidavits within the prescribed time, and (c) the lien affidavits were ineffective to affix a lien on the property because Denco had no

---

[2]*See* TEX. PROP. CODE ANN. § 53.021 (West Supp. 2014).

privity of contact with Bre Thorne, the owner of the realty; (4) alleged that Denco's act in filing fraudulent lien affidavits tortiously interfered with Body Bar's lease with Bre Throne, causing damages in the amount of the $25,000.00 reimbursement prescribed in the lease agreement; and (5) sought to recover Body Bar's attorney fees.

Denco responded by filing counterclaims of its own, these counterclaims seeking relief for the alleged breach of contract, quantum meruit, unjust enrichment, and attorney fees, together with the relief of allowing it to foreclose the mechanic's liens it alleged that it held.

Body Bar filed a combination traditional and no-evidence motion for summary judgment. After reviewing the summary judgment evidence, the trial court (1) ruled that neither the constitutional mechanic's lien nor the statutory mechanic's lien alleged by Denco were valid and that neither was subject to foreclosure; (2) determined that Denco had breached its contract with Body Bar, that Denco was guilty of tortious interference with Body Bar's contract with its lessor, and that Denco was not entitled to recovery under its claim of quantum meruit or unjust enrichment;[3] and (3) granted Body Bar recovery of $25,000.00 in damages, $16,451.00 in attorney fees and $491.00 in costs. Denco appeals the trial court's ruling.

In this case, we find that the summary judgment evidence (1) conclusively established that the statutory and constitutional liens were invalid, (2) conclusively established that Body Bar was entitled to summary judgment on all of Denco's claims, (3) failed to conclusively establish that Body Bar sustained damages as a result of Denco's breach, and (4) failed to conclusively establish tortious interference with the lease with Bre Thorne as a matter of law. In short, Body

---

[3]See further discussion below.

4

Bar established its entitlement to summary judgment on its declaratory judgment and breach of contract claim as a matter of law. However, while Body Bar proved that Bre Thorne withheld reimbursement due to the invalid liens filed on the premises, Body Bar failed to prove that Bre Thorne would not pay the reimbursement once the liens were invalidated. Thus, while Body Bar demonstrated that it sustained some damage (including interest on the reimbursement had it been timely paid), the amount of damages actually sustained in light of our opinion remains speculative.[4]

We further find (1) that Denco could not foreclose invalid liens, (2) that Denco failed to raise a genuine issue of material fact demonstrating that Body Bar was contractually obligated to pay the additional sums requested by Denco, and (3) that Denco's equitable claims of unjust enrichment and quantum meruit were precluded as a matter of law because the labor used to complete the project was covered by the contract price. Because Denco failed to raise more than a scintilla of evidence on any of its claims, the trial court's no-evidence motion for summary judgment was proper.

We affirm the trial court's judgment in part, but reverse (1) the finding that Body Bar established tortious interference as a matter of law, (2) the finding that Body Bar established breach of contract as a matter of law, and (3) the award of $25,000.00 to Body Bar, and remand these matters to the trial court for further proceedings consistent with this opinion.

---

[4]We find that the amounts of attorney fees and costs were conclusively established by an affidavit filed by Body Bar's counsel.

## I.    Standard of Review

"We apply well-known standards in our review of traditional and no-evidence summary judgment motions." *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, No. 05-13-01289-CV, 2014 WL 3827937, at *2 (Tex. App.—Dallas Aug. 5, 2014, no pet. h.) (citing *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). "With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Id.* (citing Tex. R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49). "We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict." *Id.* (citing Tex. R. Civ. P. 166a(i); *Gish*, 286 S.W.3d at 310). "To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim." *Id.* (citing *Gish*, 286 S.W.3d at 310; *see* Tex. R. Civ. P. 166a(i)). "Within the framework of these standards, we review the trial court's summary judgment de novo." *Id.* (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010)).

## II.    The Summary Judgment Evidence

Denco provided Body Bar with a proposed estimate, which (1) extensively detailed the work Denco would complete on the project, (2) included Denco's overhead, (3) in a document titled "General Conditions," included an estimate for "Lump Sum" "Labor Burden," and ten hours of "Miscellaneous Labor," and (4) provided $123,841.81 as the total cost for the project. When Denco won the bid, its bid proposal was incorporated into the contract with Body Bar.

The contract stated, "Only work explicitly listed in the Proposal is included. All other work is excluded. [Body Bar] shall request any clarification needed regarding the scope of work included in the Proposal." The contract further explained, "Request for work in addition to the Proposal may be completed, and, even without a signed Change Order, will result at an additional cost to [Body Bar]." The contract also set forth the following payment schedule: "Payment shall be made as follows: 30% After demo and underground plumb / 30% After wall inspections / 30% Up building / Final 10% upon move in . . . ."

Denco began work on the project on June 11, 2012. According to the terms of the contract's payment schedule, Denco delivered Body Bar the first $37,152.54 invoice on June 25, the second $44,493.29 invoice on July 25, and the third $24,768.37 invoice on August 28, 2012.[5] Body Bar paid each of these invoices in full.

Denco's contract with Body Bar also stated, "Unless specified elsewhere in the Contract Documents, liquidated damages for work not completed on time shall not exceed $100 per day." The projected opening date for the studio was August 4, 2012. On July 25, 2012, Emilie Shaulis, Denco's office manager, e-mailed a delay log to Alison Bradley, human resources manager for Body Bar. The delay log indicated a 152-day delay and listed reasons for the delay that were outside of Denco's control. A July 27, 2012, e-mail from Denco informed Body Bar and its design team that the "structure over juice bar," exposed beams, and "ledgerstone accent band" in the bathrooms failed the city's health inspection because they could not easily be wiped clean. On August 1, 2012, Denco's President, Mark L. Boland, sent an e-mail to Body Bar's design

---

[5]Pursuant to an approved change order, Denco billed an additional $1,368.21 on August 1, and Body Bar paid the amount on August 22, 2012.

team stating, "A week ago I said we could complete in 3 weeks.  That date will slip if materials cannot be delivered and design issues resolved in timely fashion."  The studio was opened on or about September 7, 2012, thirty-four days past the August 4 projected opening date.

On September 13, 2012, after Denco had completed the project, Shaulis sent the following e-mail to Bradley:

> As a result of the delays on the Body Bar, Plano, TX, Denco has suffered financially.  We are asking for you to review the attached documents and please consider additional compensation.
>
> . . . . As you can see the delays . . . only extend[ed] us 34 days past the original opening date.  In cost for General Conditions we have calculated for the 34 days past the August 4, Opening Date.  However our labor is much more extensive as we had a crew of 4 men working over 8 hours a day and Saturdays and Sundays.
>
> General Conditions for Days Past Original Schedule -$180.72 x34 days **$6,144.48**
> . . . Normal hours -$17.00per Hr x 4men=$68.00hr@8hrs@34 days     **$18,496.00**
> Weekend and After Hours Labor -47 days @ 8hrs @ $11.42 hr          **$4,292.92**
> Total amount of additional monies from 34 days of Delays          **$28,933.40**
>
> If you have any questions at all, please do not hesitate to contact our office at your convenience.  Again please review the documentation and consider additional compensation.

On September 17, 2012, Shaulis sent Denco's final $32,848.44 invoice to Bradley with the notation, "Per our earlier email.  Here is the Final amount due, to Denco for the Body Bar, Plano, TX.  This will be [the] billing for remaining balance of all [Proposed Change Orders (PCO)] as well as all new PCO's as sent on Friday 9-14."  Later that day, Shaulis clarified, "The final invoice did not include the delay claim amount of $28[,]933.40 that was also sent over late last week. I[']m  hoping this amount is being considered."

8

On October 3, 2012, Shaulis e-mailed Bradley to inquire about the "payment status of [Denco's] Final Billing and Status of any monies to be paid on [its] Delay Claim." Bradley responded, "The check is going out today for final billing." On that date, Body Bar paid the final invoice—including additional sums for PCO's—in full. In total, Body Bar paid Denco $140,630.85—$16,789.04 more than the amount included in the contract estimate.

Denco accepted and applied Body Bar's final payment and produced documentation showing that the account had a zero balance. On October 8, 2012, Shaulis thanked Bradley for payment of the final invoice, but wrote, "We would like to inquire with respect, on our Delay Claim that was sent on September 13, 2012. Our office worked diligently in order to keep the project moving forward in spite of all the delays that were presented. Has any consideration of additional funding been given?" On October 17, 2012, Smith again asked Bradley about the delay cost and pleaded, "The cost of said delays was substantial in fact at this point our cost exceeds the job income due to the delays out of our control. We are always thankful to be a part of any Team but believe we deserve some help with these cost[s]." On November 5, 2012, Smith pleaded with Body Bar's majority shareholder, again reminding that the delays were the result of "incomplete designs or designs that do not meet city requirement[s]" and suggesting, "I say we pursue the claim and perhaps you will get paid with the Design Team errors and omission insurance."

On December 7, 2012, Smith executed a lien affidavit in which he swore that Denco had furnished labor and materials for improvement to real property under an agreement with Body Bar and that "$28,933.40 . . . remain[ed] unpaid and is due and owing to Claimant under its

9

agreement with Body Bar." The lien affidavit and claim purporting to encumber the rental space with a lien was filed with the Clerk of Collin County, Texas, on December 13, 2012, in order to obtain both statutory and constitutional liens. Denco sent both Bre Thorne and Body Bar notice of the filing of the lien affidavit on December 26, 2012. On January 16, 2013, Body Bar's counsel responded to Denco's notice by arguing that the alleged liens were invalid because (1) they were based, in part, on work performed in June 2012 and the statutory deadline for filing liens expired in November 2012,[6] (2) Denco failed to provide Body Bar with notice of the lien as required by the Texas Property Code, (3) the contract did not provide for delay damages, and (4) Body Bar paid Denco in full for all invoices under the contract and all approved PCOs.[7] Denco did not take action to relieve the property of the cloud on the title cast by the lien affidavits.

Body Bar sued Denco and, after adequate time for discovery, moved for summary judgment. In addition to documents demonstrating the facts recited above, Body Bar submitted Bradley's affidavit as summary judgment evidence. Bradley's affidavit swore (1) that Denco never requested additional compensation for the delays until after the project was completed,[8] (2) that "Denco further told [me] that the amount Denco sought in payment application number

---

[6]"[T]he person claiming the lien must file an affidavit with the county clerk of the county in which the property is located . . . not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues." TEX. PROP. CODE ANN. § 53.052(a) (West 2007).

[7]The letter also warned, "Further, if DENCO's actions in filing these fraudulent liens have in any way damaged Body Bar's relationship with Premises owner Bre Thorne, Body Bar will seek full restitution of these damages from DENCO."

[8]Bradley's affidavit contains a minor discrepancy because it states both that "Denco completed work on the Project on or about the 18th day of September 2012" and that "[o]n September 13, 2012, after completion of the Project, Denco requested Body Bar to consider additional compensation." However, e-mails from Shaulis establish that the project was completed prior to submission of the final invoice.

10

four is the final amount Body Bar owed to Denco for the Project," (3) that Body Bar never agreed to pay the delay charges in writing or otherwise, (4) that Denco merely requested payment of the delay claim and did not demand payment before filing the lien affidavits, (5) that Denco never provided documentation demonstrating that Body Bar was obligated to pay the delay claim, (6) that Body Bar paid all of Denco's invoices and PCOs, and (7) that, as a result of the liens, Bre Thorne informed Body Bar that it was withholding the $25,000.00 tenant improvement allowance (reimbursement). Body Bar also submitted an attorney fees affidavit that detailed its attorneys' hourly rates and work completed, attached counsels' billing records, and concluded, "Body Bar has incurred a total of $16,451.00 in reasonable and necessary attorneys' fees in this matter, and $491.10 in costs."

In response to Body Bar's combination traditional and no-evidence summary judgment motion, Denco attached Shaulis' affidavit, which stated,

> Additional work for this project was necessary due to multiple delays caused by Body Bar, LLC and its representatives, resulting in additional work beyond the scope of the original agreement to be completed by Denco, notice of these delays and additional expenses were timely documented by Denco and communicated to Body Bar, LLC both during the completion of this construction project and upon completion of the project.[9]

Denco relied on the language in the contract stating, "Request for work in addition to the Proposal may be completed, and, even without a signed Change Order, will result at an additional cost to the Owner. It shall be the Owner's responsibility to secure a written proposed Change Order before requesting additional work."

---

[9] At the summary judgment hearing, Denco's counsel stated that the delay claim was for "additional work hours that were required to complete the project as per the contract."

Based on this evidence, the trial court granted Body Bar's traditional and no-evidence motion for summary judgment.

### III. Analysis of the Trial Court's Entry of Summary Judgment

#### A. Denco's Affidavits Were Not Effective to Create a Valid Mechanic's Lien

Denco argues that Body Bar was not entitled to a declaratory judgment that the alleged liens were invalid. In its motion for summary judgment, Body Bar argued that "Denco had no legal right to place a lien on the fee interest of the landlord's property" due to lack of privity of contract with Bre Thorne. We agree.

Denco's lien encumbered the following property: "PRESTON PARK VILLAGE, BLK A, LOT 1R, 26305 ACRES, CITY OF PLANO . . . (1900 PRESTON RD., SUITE 269)."[10] At the time that the liens were filed, the property was owned in fee by Bre Thorne. Texas law recognizes two possible types of mechanic's liens: (1) a constitutional lien and (2) a statutory lien. TEX. CONST. art. XVI, § 37; TEX. PROP. CODE ANN. 53.001 (West 2007). "[A] constitutional lien requires a person to be in privity of contract with the property owner."[11] *Trinity Drywall Sys., LLC v. Toka Gen. Contrs., Ltd.*, 416 S.W.3d 201, 209 (Tex. App.—El Paso 2013, pet. filed); *see Gibson v. Bostick Roofing & Sheet Metal Co.*, 148 S.W.3d 482, 493 (Tex.

---

[10]We assume that the lien encumbered only 1900 Preston Road, Suite 269, and not the entire acreage set forth in the lien affidavit.

[11]Article XVI, Section 37 of the Texas Constitution provides,

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

TEX. CONST. art. XVI, § 37.

12

App.—El Paso 2004, no pet.). The same privity of contract with the property owner is required to establish a statutory lien that encumbers the owner's property. *See* TEX. PROP. CODE ANN. § 53.021(a)(2) (West Supp. 2013) (A person has a statutory lien if "the person labors . . . or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent . . . ."); TEX. PROP. CODE ANN. § 53.001(7) (defining "Original Contractor" as "a person contracting with an owner either directly or through the owner's agent").

Smith's lien affidavit listed Bre Thorne as the owner of the property sought to be encumbered. Yet, there is no evidence in the record establishing that either Regency (who was the owner of the premises at the time the contract for improvements was entered) or Bre Thorne (the subsequent owner) contracted with Denco or that Body Bar was the agent of either at the time it entered into the contract for improvements or when Denco's additional charges supposedly accrued. "[W]here the contract for labor, materials or construction is not made with the owner or his duly-authorized agent, a lien may not be fixed on his property." *Gibson*, 148 S.W.3d at 494; *see 2811 Assocs., Ltd. v. Metroplex Lighting & Elec.*, 765 S.W.2d 851, 853 (Tex. App.—Dallas 1989, writ denied). The mechanic's lien affidavit was not filed until after Regency had sold to Bre Thorne.

Because there was no evidence that Denco was in privity of contract with the owner of the premises, it was not entitled to a constitutional lien against Bre Thorne's fee interest in the property. "[I]f a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor." *Diversified Mortg. Investor v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 805 (Tex. 1978); *see Bannum, Inc. v. Mees*,

13

No. 07-12-00458-CV, 2014 WL 2918436, at **3–4 (Tex. App.—Amarillo Jun. 24, 2014, no pet. h.) (mem. op.); *Terraces at Cedar Hill, L.L.C. v. Gartex Masonry & Supply, Inc*., No. 05-10-00226-CV, 2011 WL 1050852, at *2 (Tex. App.—Dallas Mar. 24, 2011, pet. denied) (mem. op.). Thus, the affidavit laying claim to statutory and constitutional mechanic's liens—which were not limited to Body Bar's leasehold interest—did not validly encumber the property.[12] Because the liens were not perfected, Denco was not entitled to foreclosure.

**B.      Summary Judgment on Denco's Breach of Contract Claims Was Proper**

"The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach." *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 658 (Tex. App.—Dallas 2012, no pet.). Body Bar argues that it conclusively established compliance with its obligations under the contract and that Denco breached the contract by attempting to charge more than the contractual amount.

---

[12]Body Bar argues that Denco failed to meet statutory requirements to perfect the lien. "A person who files an affidavit must send a copy of the affidavit by registered or certified mail to the owner or reputed owner . . . not later than the fifth day after the date the affidavit is filed with the county clerk." TEX. PROP. CODE ANN. § 53.055(a) (West 2007). "A party must comply with chapter 53 to perfect a lien under the statute." *Addison Urban Dev. Partners, LLC v. Alan Ritchey Materials Co., LC*, No. 05-13-00122-CV, 2014 WL 2946019, at *4 (Tex. App.—Dallas July 1, 2014, no pet. h.) (citing *Morrell Masonry Supply, Inc. v. Lupe's Shenandoah Reserve, LLC*, 363 S.W.3d 901 (Tex. App.—Beaumont 2012, no pet.); TEX. PROP. CODE ANN. § 53.051). Here, Denco admitted that it failed to comply with Section 53.055(a). However, substantial compliance with Chapter 53 is sufficient, and "[c]ases interpreting the mechanic's and materialman's lien statutes counsel against invalidating a lien on a purely technical basis." *Id.* (citing *Ready Cable, Inc. v. RJP S. Comfort Homes, Inc.*, 295 S.W.3d 763, 765 (Tex. App.—Austin 2009, no pet.)).

The question of whether Body Bar tendered full performance under the contract requires contract interpretation. In this case, neither party argues that the contract is ambiguous.[13] The bid proposal included the following work: demolition, foundations/slabs/piers, masonry/brick–ledger stone veneer, structural steel, finish carpentry/millwork/trim carpentry, doors/frames, finish hardware, glazing/storefront, drywall/framing, ceilings, flooring, tape/bed/paint, fire extinguishers, HVAC/controls, plumbing, electrical, furnishings (installation only), granite tops, custom ceiling over bar, restroom makeover, replace restroom sink, temporary protection, small tools and miscellaneous expense, dumpster fees, final clean and make ready, and insurance.[14] Denco's contract with Body Bar incorporated its $123,841.81 bid, specifically including all work required to complete the proposal, and the only provision it made for per-diem damages for delays was a fee that Denco would be assessed if it did not complete the project within a specified time.[15] The proposal's General Conditions section specifically set forth a lump sum cost for the total labor burden, and a cost for ten additional hours of miscellaneous labor. By its plain terms, the contract included all of the labor required to complete the proposal.

The delay logs demonstrate that the overtime labor was expended on completing work included in the proposal. As an example, the table below lists the reason for the delay included in the delay log, along with the work to be completed by Denco under the terms of the proposal:

[13]"If a contract is worded such that it can be given a certain or definite legal meaning, we construe the contract as a matter of law." *Am. Bd. of Obstetrics & Gynecology, Inc. v. Yoonessi*, 286 S.W.3d 624, 628 (Tex. App.—Dallas 2009, pet. denied).

[14]The proposal also incorporated the cost of the following items for five weeks: truck and gas allowance, temporary phone, temporary data, project manager, project administrator, project superintendent.

[15]The contract provided for per-diem liquidated damages in case Denco failed to complete the project on time. Perhaps Denco chose to hire overtime workers to complete the project to avoid assessment of a substantial amount of liquidated damages.

| Reason for Delay Provided in Delay Log | Proposal Work Item Impacted |
|---|---|
| Permit Delay | All |
| Custom Glass Doors Delay | Doors/Frames |
| AC Unit Delay | HVAC/Controls |
| Juice Bar Ceiling, Not per City Code | Finish Carpentry/Millwork/Trim Carpentry |
| Interior Dimensions | Drywall/Framing; Finish Carpentry/ Millwork/Trim Carpentry |
| Quarry Tile Discontinued | Flooring |
| Granite Cambria Torquay is Backordered | Millwork |
| Candle Niche, Trim Out and Placement | Millwork |
| Air Conditioning into Reception Area | HVAC/Controls |
| Receipt of New Stone for Walls | Flooring, Painting |
| Finish Hardware for Custom Glass Door | Finish Hardware |
| Receipt of New Stone for Walls | Flooring, Painting |

Denco's response relies on a contract clause which states, "Request for work in addition to the Proposal may be completed, and, even without a signed Change Order, will result at an additional cost to [Body Bar]. It shall be [Body Bar's]'s responsibility to secure a written proposed Charge Order before requesting additional work." Denco argues that this clause applies because Shaulis' affidavit "provide[s] evidence that there was additional work required to be completed by [Denco] outside of the scope of the contract."[16] Shaulis' affidavit stated,

> Additional work for this project was necessary due to multiple delays caused by Body Bar, LLC and its representatives, resulting in additional work beyond the scope of the original agreement to be completed by Denco, notice of these delays and additional expenses were timely documented by Denco and communicated to Body Bar, LLC both during the completion of this construction project and upon completion of the project.

---

[16]We do not believe Denco is truly arguing that the work completed by its laborers was outside the scope of the contract. If that was so, Denco's evidence was insufficient to raise a genuine issue of material fact on its claim for breach of contract. Rather, we believe Denco argues that additional work required was outside the scope of the bid proposal incorporated into the contract and that the contract provided a procedure by which Body Bar could be charged for additional work.

First, Shaulis' statement that the work completed by the laborers constituted "additional work beyond the scope of the original agreement" is unfounded and incorrect. Body Bar objected to Shaulis' affidavit at trial, claiming it is conclusory, and Body Bar reasserts that complaint on appeal.[17] "Conclusory statements in affidavits are not proper summary judgment evidence if there are no facts to support the conclusions." *James L. Gang & Assocs., Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 439 (Tex. App.—Dallas 2006, no pet.); *see E.I. Du Pont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (affidavit is conclusory when it expresses inference without stating underlying facts supporting inference). Because it does not raise fact issues, a conclusory affidavit is incompetent evidence that, as a matter of law, does not support a summary judgment. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (conclusory affidavits "are not credible, nor susceptible to being readily controverted"); *see Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam) (op. on reh'g). Without referencing the type of work completed during the overtime labor, Shaulis classified the work as "additional work" that was not contemplated by the bid proposal. Shaulis made this statement even though (1) the delay logs establish that the delay only impacted Denco's ability to proceed with labor on items included in the proposal, and (2) the record is devoid of evidence showing that the laborers who worked overtime completed

---

[17]Body Bar did not secure a ruling on this objection. However, "conclusory statements in affidavits are errors of substance and not form, and such defect is not waived on appeal by failure to object in the trial court, or as in this case, to obtain a ruling on the objection." *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 490 n.7 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Ramirez v. Transcon. Ins. Co.*, 881 S.W.2d 818, 829 (Tex. App.—Houston [14th Dist.] 1994, writ denied)); *see Strother v. City of Rockwall*, 358 S.W.3d 462, 469 (Tex. App.—Dallas 2012, no pet.) (citing *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.).

work that was not contemplated by the bid proposal. Because Shaulis' conclusion was not supported by fact, we find this portion of Shaulis' affidavit conclusory.

Second, the contract clause upon which Denco relies only allowed Denco to charge an additional cost for "work in addition to the [p]roposal" that had been requested by Body Bar. Shaulis' affidavit stated only that additional work was necessary, not that additional work was requested by Body Bar. Further, there is no other evidence that Body Bar requested additional work outside of the scope of the bid proposal. Thus, the clause upon which Denco relies to support its interpretation of the contract is inapplicable.

Here, the summary judgment evidence conclusively established that all of the delay labor cost was included in the contract price. The evidence established that (1) while Body Bar was consistently informed about the project delays and reasons for the delay, Denco did not notify Body Bar that it was paying laborers overtime to speed up the project and did not seek payment for work completed by the laborers until after the project was completed; (2) Denco merely asked Body Bar to consider the damage claim and did not represent that Body Bar was required to pay the claim under the contract until after the lien affidavit was filed; (3) Denco excluded the delay claim from the last invoice; (4) Shaulis affirmed that the bid included all labor, and revealed that Denco underestimated the labor cost when she wrote, "In cost for General Conditions we have calculated for the 34 days past the August 4, Opening Date;" (5) Denco described its last invoice to Body Bar as the final invoice containing the "Final amount due, to Denco for the Body Bar" project; (6) Shaulis e-mailed Bradley and expressed her "hope" that the

18

delay amount was being considered; (7) Denco applied the final payment and produced documentation demonstrating that the Body Bar account had a zero balance.

The summary judgment evidence further established that Body Bar fully paid all of the invoices submitted by Denco in accord with the contract. Because we have determined (1) that the cost for overtime labor was included in the contract price, (2) that the contract price was paid in full, and (3) that no evidence shows that Body Bar otherwise agreed to pay additional sums for the overtime labor, we find that Body Bar established its full performance under the contract as a matter of law and that Denco failed to raise a genuine issue of material fact that Body Bar breached the contract.

Because Denco failed to raise a genuine issue of material fact on its breach of contract claim, the trial court's ruling on the no-evidence motion for summary judgment was also proper.

### C. Body Bar Did Not Establish Damages Resulting from Denco's Breach

The summary judgment movant has the burden of establishing its right to summary judgment by conclusively proving all elements of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.3d 217, 223 (Tex. 1999). As our discussion in the previous section shows, Body Bar established as a matter of law the existence of a valid contract, Body Bar's performance of the contract, and Denco's breach of the contract by seeking to charge additional amounts to which it was not entitled. However, although Body Bar established that Denco breached its contract, it has not shown that it was damaged by that breach, an essential element of its cause of action.

19

First, it is undisputed that Body Bar never paid Denco the additional amounts it sought. Therefore, even though Denco may have technically breached the contract by seeking amounts to which it was not entitled, Body Bar did not suffer damages as a result of this breach. *See Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 127 (Tex. App.—Corpus Christi 1999, pet. denied).

Body Bar also alleged that it was damaged as a result of Denco's filing of the lien affidavits. As we have seen, the filing of the lien affidavits was wrongful and placed a cloud on the title of the owner of the real estate. However, this did not directly injure Body Bar. Body Bar relied on Bradley's affidavit to establish that Body Bar incurred damages as a result of Denco's breach in the form of Bre Thorne's withholding of the tenant improvement allowance or reimbursement. The affidavit stated,

> The landlord for the Premises previously notified Body Bar that it was withholding the tenant improvement allowance due and owing to Body Bar pursuant to the lease for the Premises due to the lien on the Premises filed by Denco. The amount of the tenant improvement allowance that the landlord refused to pay Body [B]ar is $25,000.00.

So, Body Bar is claiming damages related to its landlord's withholding payment under an unrelated contract. Clearly, these damages, if any, are only indirectly related to the wrongful filing of the lien affidavit, but not to Denco's breach of contract. It was only after Body Bar's landlord, the owner of the real estate, withheld payment because of the lien that Body Bar suffered any damage. This damage, however, was only indirectly the result of Denco's actions.

Further, Body Bar has not pointed to any provision in the contract that this filing allegedly breached. Since Body Bar has not shown that Denco's filing of the lien affidavits was

20

a breach of its contract, it cannot rely on this action to support any breach of contract damages. Therefore, since Body Bar has not established as a matter of law that Denco's breach caused it any damages, it was not entitled to summary judgment on its breach of contract claims.

### D. Body Bar Was Not Entitled to an Award of Damages

At the summary judgment hearing, Denco argued that because Body Bar's pleadings indicated that Bre Thorne would pay the reimbursement in the event that the liens were removed, an order requiring Denco to pay the $25,000.00 "would result in a double . . . resolution or a windfall." In response, Body Bar admitted,

> Your Honor, real briefly regarding the $25,000 claim, that's not anywhere. There's no evidence of that fact. There's no personal knowledge of that fact.
> The landlord has told us we're not going to get the [$]25,000, and at this point, a year later, we do not know whether they're going to give it to us or not. Certainly, we do not want a double recovery.

Because (1) Bradley's affidavit stated that Bre Thorne was withholding the reimbursement due to the liens, (2) the liens were properly declared invalid, and (3) the summary judgment evidence fails to establish whether Bre Thorne will continue to refuse to pay reimbursement once the liens are lifted, we find that Body Bar did not show entitlement to the $25,000.00 awarded to it in the trial court's summary judgment as a matter of law. Accordingly, we reverse the trial court's award of $25,000.00 to Body Bar and remand the issue of damages to the trial court for further proceedings.

### E. Tortious Interference Was Not Conclusively Established

The elements of tortious interference with contractual relations are "(1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such

21

intentional act was a proximate cause of plaintiff's damage and (4) actual damage or loss occurred." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991); *see Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

Denco argues that Body Bar failed to introduce any evidence demonstrating that Denco knew of relevant lease terms or that Denco willfully and intentionally interfered with the lease agreement. We agree. *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (question is whether defendant desired to interfere with contract or believed interference was substantially certain to result from actions). Body Bar's lease agreement with Bre Thorne is not included in the summary judgment record. Rather, the relevant terms of the lease are set forth in Bradley's affidavit, but Bradley makes no mention of whether these lease terms were communicated to Denco. Thus, nothing in the record established willful and intentional interference with the lease agreement. Accordingly, the trial court's summary judgment on this ground was improper and is reversed.

## F. Denco Was Not Entitled to Equitable Relief

As a threshold issue, Denco argues that the trial court erred in resolving its claim for quantum meruit because Body Bar's motion for summary judgment failed to address the claim. Under the heading "Quantum Meruit/Unjust Enrichment," Denco pled,

> Defendant provided materials and labor for the construction project the subject of this suit. Plaintiff received a benefit, in the form of the labor and materials provided by defendant, which improved the structures and increased the value of this property. To date defendant has not received full payment for the labor and materials provided on this project. Plaintiff received a benefit from defendant's labor and materials and it is unjust for them to retain this benefit without providing just compensation to Defendant for their labor and materials provided.

22

Defendant is entitled to restitution for the value of the benefit Plaintiff received through Defendant's labor and materials provided for this project.[18]

A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Denco's pleading does not allege, and Body Bar argued that there was no evidence demonstrating, that Body Bar benefited by fraud, duress, or the taking of unfair advantage. Body Bar's initial summary judgment motion, however, did not specifically mention quantum meruit—"an equitable theory of recovery . . . based on an implied agreement to pay for benefits received." *Id*. (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).[19] It appears that despite its third counter-claim heading, Denco's petition only asserted quantum meruit, whereas Body Bar's initial no evidence motion addressed only unjust enrichment. However, Body Bar filed a sur-reply prior to the summary judgment hearing arguing that Denco's "quantum meruit claims fail[ed]" as a matter of law.

In any event, aside from certain exceptions not relevant here, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit or unjust enrichment only when there is no express contract covering those services or materials. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex.

---

[18]The trial court granted Body Bar's no-evidence motion on "Denco's [claim] for quantum meruit/unjust enrichment."

[19]"To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros.*, 832 S.W.2d at 41 (citing *Vortt Exploration*, 832 S.W.2d at 944).

23

2000); *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (citing *Black Lake Pipeline v. Union Construction Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964)).  "That is because parties should be bound by their express agreements.  When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod.*, 52 S.W.3d at 684.  Thus, as is the case here, "when a party claims that it is owed more than the payments called for under a contract, there can be no recovery for unjust enrichment [or quantum meruit] '"if the same subject is covered by [the] express contract."'" *Id.* (quoting *TransAm. Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied) (quoting *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied))).

Because we determined that Body Bar's contract with Denco included all sums for labor required to complete the proposal and that the overtime workers labored on items expressly included in the proposal, we find that Denco's equitable claims were barred as a matter of law. Thus, the trial court's entry of a ruling on the no-evidence summary judgment on Denco's quasi-contractual claims was proper.

IV.     **Conclusion**

We affirm the trial court's summary judgment (1) granting Body Bar's declaratory judgment claim and (2) disposing of all of Denco's claims.  We reverse the portion of the trial court's summary judgment (1) finding that Body Bar established tortious interference as a matter of law, (2) granting Body Bar's breach of contract claim, and (3) awarding $25,000.00 to Body

24

Bar and remand these matters to the trial court for further proceedings consistent with this opinion.

                                        Bailey C. Moseley
                                        Justice

Date Submitted:      August 22, 2014
Date Decided:        September 26, 2014