**Affirmed as Modified and Opinion filed May 19, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00224-CV

**PRABHAKAR GUNIGANTI, INDIVIDUALLY, THE GUNIGANTI CHILDREN'S 1999 TRUST, AND TRIPLE PG SAND DEVELOPMENT, LLC, Appellants**

V.

**C & S COMPONENTS COMPANY, LTD., Appellee**

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-41323**

## O P I N I O N

This lawsuit stems from the sale of sand processing plant components by appellee C&S Components Company, Ltd. to appellant Triple PG Sand Development, LLC. The plant was constructed on property owned by appellant The Guniganti Children's 1999 Trust. Appellant Prabhakar Guniganti created the 1999 Trust and founded and owns Triple PG. C&S sued Triple PG and Guniganti for, among other things, breach of contract for failing to pay the total due on the components. C&S also obtained a

mechanic's lien against the property owned by the 1999 Trust. Appellants counterclaimed for, among other things, negligent misrepresentation and filing of a fraudulent lien. Before the case was submitted to the jury, the trial court determined as a matter of law that the parties entered into a modification of the original sales contract and that Triple PG and Guniganti breached the agreement as so modified. The jury then found damages for the breach of contract of $312,345.78, found C&S did not make negligent misrepresentations or file a fraudulent lien, and found the reasonable and necessary amount of attorney's fees for C&S. The trial court rendered judgment favoring C&S, including damages and attorney's fees as found by the jury, but did not provide for either foreclosure or discharge of the lien.

In four issues, appellants contend that (1) the trial court erred in determining as a matter of law that the parties entered into a modification of the original sales contract; (2) the trial court erred in failing to state in the judgment that C&S was not entitled to a lien; (3) the jury's failure to find that the lien was fraudulent was against the great weight and preponderance of the evidence; and (4) in the event the judgment for breach of contract is reversed, the award of attorney's fees to C&S should also be reversed. We modify the judgment in response to appellants' second issue and affirm the judgment as so modified.

## I. Background

Guniganti and his wife created the 1999 Trust, transferred a 495-acre parcel of land to the trust, and named Daya Puskoor, Guniganti's brother-in-law, as trustee. Hallett Materials operated a sand processing plant on the property for around ten years. When the contract between Hallett and the trust expired in 2010, Guniganti and Puskoor agreed that they did not need to bring in a third-party to run a sand processing plant on the property. Guniganti founded Triple PG in February 2011 for the purpose of constructing and running a new sand plant. C&S, owned by Danny Kautz and his wife,

2

sells components for sand processing plants. When an employee of Triple PG, Mark Burnett, requested a quote from C&S for sand plant components, Kautz responded with a detailed proposal on June 1, 2011. Although no formal contract was ever signed by the parties, it is undisputed that the June 1 proposal, admitted into evidence as Plaintiff's Exhibit 1, became the original contract between C&S, Triple PG, and Guniganti. The total contract price stated in the proposal was $1,217,959.[1]

C&S received the first payment of $365,387.70 on June 8, 2011 and within a few weeks began delivering components. C&S received a second payment in the same amount on August 4, 2011 and delivered the majority of the ordered components by November 2011. The components were manufactured by Classifying Flotation Systems (CFS) and a local fabricator. In mid-September 2011, Burnett notified Kautz of problems with welding work on some of the components. On February 21, 2012, Kautz, Burnett, Guniganti, and two manufacturer representatives met to discuss the issues with the components. Guniganti's daughter, Prathima Guniganti, who owned her own consulting firm and had been managing the payroll and billing for Triple PG, also attended the meeting. Kautz and the Gunigantis thereafter exchanged emails concerning credits to be given for some of the components.

On February 28, Kautz sent an email to Prathima, stating "[s]ee the attached, I think this is what you are looking for. If you need anything else, please call." Prathima responded a day later and copied Guniganti and his wife, stating to Kautz, "Thank you for making the revisions to the invoice to reflect the adjustments from our discussion. I have included Dr[.] and Mrs[.] Guniganti so they have the correct invoice for their

---

[1] At trial, there was considerable testimony regarding discussions between Kautz and representatives of Triple PG regarding what type of sand processing equipment would be best, given the nature of the sand on the property as well as market conditions. Appellants based their claims for negligent misrepresentation at least partly on these discussions, essentially asserting that Kautz led them into purchasing more expensive equipment than was necessary. The jury rejected the claims, and appellants do not contest that finding on appeal.

records and payment." Attached to the emails was a C&S invoice showing a total contract price of $1,061,572 (a reduction from the original price of $1,217,959) and a balance due of $294,530.74. An additional invoice attached to the emails shows freight charges of $30,068.04 for a total balance due of $324,598.78. The email string and attached invoices were admitted into evidence as Plaintiff's Exhibit 21.

At trial, Kautz testified that additional credits should be applied against the invoice amount, leaving a final balance due of $312,345.78, the exact figure awarded by the jury. Kautz thereafter sent a series of emails requesting payment, but when the requests went unanswered, C&S filed the present lawsuit as well as the mechanic's lien against the 1999 Trust's property. Appellants thereafter filed their counterclaims, and after certain causes of action were dismissed in summary judgment proceedings, the case proceeded to a jury trial principally on allegations that Triple PG and Guniganti breached the contract and C&S made negligent misrepresentations and filed a fraudulent lien.

As mentioned above, before submitting the case to the jury, the trial court determined as a matter of law that the email string and attached invoices admitted as Exhibit 21 constituted a modification of the parties' original sales contract and that Triple PG and Guniganti breached the agreement as modified. The jury then found damages for the breach of contract of $312,345.78, found C&S did not make negligent misrepresentations or file a fraudulent lien, and found the reasonable and necessary amount of attorney's fees for C&S. Relative to the validity of the lien, the jury also answered "no" to inquiries regarding whether Triple PG or Guniganti effectively controlled the 1999 Trust. The trial court rendered judgment awarding C&S $312,345.78 plus attorney's fees but did not provide for foreclosure or discharge of the lien. The judgment also contains a Mother Hubbard clause ordering that "[a]ll relief not expressly granted herein be, and the same is, denied to the party seeking same."

4

## II. Modification of Contract

In their first issue, appellants contend that the trial court erred in determining as a matter of law that the parties entered into a modification of the original sales contract. The parties agree that as a sale of goods, the transaction was governed by the Texas Uniform Commercial Code (UCC). Tex. Bus. & Com. Code §§ 2.101–.725; *Howard Indus., Inc. v. Crown Cork & Seal Co., LLC*, 403 S.W.3d 347, 349 (Tex. App.—Houston [1st Dist.] 2013, no pet.). UCC section 2.209 governs modification of contracts that fall within the chapter. Tex. Bus. & Com. Code § 2.209. Appellants focus their arguments on subsection 2.209(c), which provides that "[t]he requirements of the statute of frauds section of this chapter (Section 2.201) must be satisfied if the contract as modified is within its provisions." Appellants specifically assert that the alleged modification, Exhibit 21, did not meet the requirements of the UCC statute of frauds, section 2.201, including any of the exceptions to its requirements contained therein. According to appellants, the trial court erred in withdrawing the modification question from the jury because a question of fact remains.

Under most circumstances, in order to obtain reversal on appeal, an appellant must establish that it preserved its complaint by making it in the trial court, error in fact occurred, and such error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *See* Tex. R. App. P. 33.1(a) (requiring preservation), 44.1(a) (prohibiting reversal in the absence of harm). As to appellants' statute of frauds argument, C&S contends (1) appellants failed to preserve the issue below, (2) the court's determination was correct that modification was established as a matter of law, and (3) even if the court's ruling was in error, appellants have not demonstrated that they were harmed by the ruling. Without stating a position on the first two contentions, we turn to the question of whether appellants have demonstrated the court's ruling probably caused the

5

rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

The harmless error rule applies to all errors. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 819–20 (Tex. 1980)). "The rule recognizes that a litigant is not entitled to a perfect trial for, indeed, few trials are perfect." *Lorusso*, 603 S.W.2d at 819. Thus, the rule "establishes a sound and common sense policy of not reversing a judgment unless the error or errors can be said to have contributed in a substantial way to bring about the adverse judgment." *Id*. at 819-20. It is the complaining party's burden to show harm on appeal. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009); *see also Mullendore v. Muehlstein*, 441 S.W.3d 426, 430 (Tex. App.—El Paso 2014, pet. abated) (stating in connection with harm analysis that an appellant is required to identify the places in the record that support the complaint).

C&S contends that any error in ruling on the modification as a matter of law was harmless because the modification, in effect, reduced the contract price by nearly $150,000, thus lowering the amount for which appellants could be held liable. We need not assess the correctness of C&S's argument, however, because, as stated above, it is the responsibility of appellants as the complaining parties to establish harm. *See, e.g., Castillo*, 279 S.W.3d at 667; *Mullendore*, 441 S.W.3d at 430. In a reply brief, appellants argue that "the harmful 'effect' of the trial court's ruling was to withdraw disputed fact issues concerning the exceptions to the statute of frauds from the jury" and that "[i]t defies logic to say that a party wrongly deprived of a jury determination of a disputed fact issue is not harmed when the judgment against that party is based on that determination." Appellants neither cite authority supporting the proposition that merely keeping an issue from the jury alone is sufficient to demonstrate that such error probably caused the rendition of an improper judgment nor provide any argument or

6

record citations to dispel the suggestion that the modification may have actually benefitted them by reducing the total contract price. Consequently, appellants have not met their burden to show harm. *See Castillo*, 279 S.W.3d at 667; *Mullendore*, 441 S.W.3d at 430. We overrule their first issue.

### III. Status of Lien

In the second issue, appellants, specifically the 1999 Trust, assert that the trial court erred in failing to declare in the judgment that C&S was not legally entitled to a lien under the Texas Constitution. *See* Tex. Const. art. XVI, § 37. On this basis, the 1999 Trust requests the judgment be modified. On June 21, 2012, C&S filed with the Harris County Clerk's office an affidavit by Kautz in support of a constitutional lien against the property owned by the 1999 Trust. In its pleadings in the present case, C&S sought a declaratory judgment that it was entitled to a lien against the 1999 Trust's property and that its lien was valid and sought foreclosure against the property. The 1999 Trust filed a counterclaim seeking to establish that C&S had no right to a constitutional lien against the property and to have the lien declared invalid on that basis.

A constitutional lien such as this requires the lienholder to be in privity of contract with the landowner. *See, e.g., Denco CS Corp. v. Body Bar, LLC*, 445 S.W.3d 863, 870-71 (Tex. App.—Texarkana 2014, no pet.); *see also* Tex. Const. art. XVI, § 37 (authorizing liens); Tex. Prop. Code §§ 53.001–.260 (providing for the enforcement of liens). It is undisputed that C&S did not have a contract with the 1999 Trust[2]; accordingly, the trial court submitted two questions to the jury inquiring whether

---

[2] In Question 1, the trial court asked the jury what sum of money would compensate C&S for Triple PG and Guniganti's failure to comply with the contract. The 1999 Trust was not included in the damages question because it was not a party to the contract. Moreover, Kautz testified that he dealt with Guniganti and other representatives of Triple PG and did not have any contact with Puskoor, the trustee of the 1999 Trust. Puskoor also testified that there was no contract between C&S and the 1999 Trust.

7

Guniganti or Triple PG "effectively control[led the 1999 Trust] through ownership of voting stock, interlocking directorships, or otherwise?"[3] The jury answered both questions in the negative. However, even though C&S attempted but failed to establish privity with the 1999 Trust, the trial court did not declare the constitutional lien invalid or order it discharged in the final judgment.[4]

C&S suggests that this issue is moot because (1) the judgment contains a Mother Hubbard clause, declaring that all relief not expressly granted therein is denied, and (2) C&S itself released the lien on January 6, 2015, when it filed a release with the Harris County Clerk's office. We disagree with both contentions.

Although C&S is correct that the judgment contains a Mother Hubbard clause denying all relief not expressly granted, which includes C&S's request for declarations that it was in privity with the 1999 Trust, its constitutional lien was valid, and it was entitled to foreclosure on the lien, this does not end the analysis. The 1999 Trust also requested a declaratory judgment that it was not a party to any contract with C&S, C&S's lien was invalid, and the property in question belongs solely to the trust and not Triple PG or Guniganti. These declaratory judgment requests were, in effect, mirror image counterclaims of C&S's claims regarding the lien.[5] Thus, denying all relief not

---

[3] These submissions appear to be based on a "sham contract" theory of privity under Property Code section 53.026(a). Prop. Code § 53.026(a); *see also Trinity Drywall v. Toka Gen. Contractors, Ltd.*, 416 S.W.3d 201, 211-12 (Tex. App.—El Paso 2013, pet. denied) (describing use of section 53.026 to establish privity of contract). We take no position regarding whether the submissions were proper.

[4] The record does not reveal why the trial court declined to address the validity of the lien in the judgment. In its response to appellants' motion for new trial, C&S represented that in light of the jury's findings and the Mother Hubbard clause in the judgment, it would remove the lien once the judgment became final and unappealable or "upon other appropriate circumstances."

[5] We take no position regarding whether the 1999 Trust's declaratory judgment counterclaims were merely denials of C&S's claims or whether they sought affirmative relief. *See generally BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841-42 (Tex. 1990) (orig. proceeding) (discussing implications of a defendant's mirror-image declaratory judgment claims); *In re BP Oil Supply Co.*, 317 S.W.3d 915, 921-22 (Tex. App.—Houston [14th Dist.] 2010) (orig. proceeding) (same). At the time of

granted did not indicate the lien was invalid or discharged; in fact, the Mother Hubbard clause denied relief to both sides on the issue of the lien's validity as well as C&S's entitlement to a lien on the 1999 Trust's property, leaving these issues—although fully tried and disposed of by the judgment—unanswered.[6] The 1999 Trust was legally entitled to relief it did not receive in the judgment; the judgment itself, therefore, did not moot the issue.

As stated, C&S further suggests that this appellate issue became moot when C&S filed a release with the Harris County Clerk's office during the pendency of the appeal.[7] C&S requests that we take judicial notice of the release, a copy of which was provided as an attachment to C&S's brief. C&S insists that release of the lien mooted the issue and thus defeats jurisdiction over the issue, citing *Briones v. Brazos Bend Villa Apartments*, 438 S.W.3d 808, 812 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A case becomes moot if at any stage there ceases to be an actual controversy between the parties."), and *Freedom Communications, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (noting appellate courts may take judicial notice of facts outside the record to determine jurisdiction). On its face, the release appears to be recorded in the property

---

final judgment, the 1999 Trust's declaratory judgment claims had not been dismissed or otherwise disposed of in the case.

[6] The existence of a Mother Hubbard clause in a judgment rendered without a conventional trial on the merits does not by itself make the judgment final and appealable. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 203-04 (Tex. 2001). Here, however, the judgment was rendered after a full trial on the merits. Additionally, the judgment also contained a statement that it "finally disposes of all claims and all parties and is appealable." The judgment was therefore final and appealable. *See id.* at 200. It is final and appealable but erroneous for not disposing in the 1999 Trust's favor the issue of C&S's right to a lien. *See, e.g., S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 358 (Tex. App.— Houston [14th Dist.] 2013, no pet.) ("If the order does not dispose of every pending claim but is 'clearly and unequivocally' final on its face, the order is not interlocutory merely because the record does not afford a legal basis for the adjudication. Rather, the order is final but erroneous. 'In those circumstances, the order must be appealed and reversed.'") (quoting *Lehmann*, 39 S.W.3d at 206).

[7] Property Code section 53.157 provides several circumstances that will result in the discharge of a lien, including the filing of a lien release by the claimant and the recording of a final judgment providing for the discharge. Tex. Prop. Code § 53.157.

9

records and states that "[i]n light of the final judgment," C&S releases and discharges the 1999 Trust's property from the constitutional lien. It also states that C&S reserves all other rights and remedies available under applicable law. In oral argument before this court, counsel for the 1999 Trust acknowledged that the copy of the release filed with this court is what it purports to be.

However, even if we were to take judicial notice of the release and determine that it discharged the lien, it would not render the issue raised on appeal moot. As explained above, the issues raised by the parties and determined at trial went beyond the existence of this particular lien and included the question of whether C&S had a right to take a lien against the 1999 Trust's property. Based on the undisputed and well-established facts that the 1999 Trust owned the property and C&S had no contract with the 1999 Trust, and the jury's negative answers to questions seeking to establish privity between C&S and the trust in other ways, the questions of whether privity of contract existed between C&S and the 1999 Trust and whether C&S had a right to take a lien on the property were fully resolved at trial. Without privity of contract, C&S possessed no right to take a lien on the 1999 Trust's property. *See, e.g., Denco CS Corp.*, 445 S.W.3d at 870-71.

In its briefing on appeal, the 1999 Trust indicated concern that C&S's release of the existing lien did not prevent C&S from refiling a lien in the future. Despite ample opportunity to do so, C&S steadfastly declined to stipulate or even acknowledge that it would not attempt to refile its lien. Despite the release of the existing lien by C&S, a live controversy still exists between the parties regarding whether C&S had a right to such a lien. *See Briones*, 438 S.W.3d at 812. Release of the existing lien did not extinguish C&S's request for a declaration that it was in privity with the 1999 Trust or the 1999 Trust's request for declarations that it was not a party to any contract with

10

C&S and the property in question belongs solely to the trust.[8]  These issues were resolved on the merits at trial and should have been resolved on the merits in the judgment.[9]  Accordingly, we sustain appellant's second issue and reform the judgment to state that no privity of contract existed between C&S and the 1999 Trust and therefore C&S was not entitled to a lien against the 1999 Trust's property.

## IV.  Fraudulent Lien Claim

In issue three, appellants contend that the jury's failure to find that C&S's lien was fraudulent was against the great weight and preponderance of the evidence.  While the jury effectively declined to find that C&S was in privity with the 1999 Trust, it also declined to find that the lien was fraudulent.  Question no. 6 read as follows:

> Did C&S Components Company, Ltd. make, present, or use the Mechanic's Lien with:  (l) knowledge that the Mechanic's Lien is a fraudulent lien or claim against real property owned by The Guniganti Children's 1999 Trust; (2) with the intent that Mechanic's Lien be given the same legal effect as a valid lien against real property; and (3) with intent to cause another to suffer financial injury?

---

[8] Declaratory judgment actions serve as a method "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  Tex. Civ. Prac. & Rem. Code § 37.002(b).

> A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.  To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute.

*Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (internal quotation marks omitted).  Releasing the existing lien did not resolve the underlying declaratory judgment claims regarding whether C&S had a right to obtain a lien against the 1999 Trust's property.

[9] C&S further argues that appellants waived their request for declarations by failing to either object to the charge as submitted or submit a proposed jury question expressly asking about whether privity of contract existed.  This assertion, however, ignores the facts that (1) it is undisputed that the 1999 Trust owns the property and there is no direct contract between C&S and the 1999 Trust, and (2) the court did submit questions regarding effective control of the 1999 Trust by either Guniganti or Triple PG and the jury answered those questions in the negative.  Any further request or submission to the jury regarding privity would have been irrelevant.

11

**Instruction:** A lien is fraudulent if the person who files it has actual knowledge that the lien was not valid at the time it was filed.[10]

The jury answered "no." In reviewing this challenge to the factual sufficiency of the evidence, we consider and weigh all of the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When, as here, there was no objection to the charge, we review the sufficiency of the evidence according to the charge actually given and not based on some other unidentified law. *Barker v. Eckman*, 213 S.W.3d 306, 313 (Tex. 2006); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *see also City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (holding that when no objection was made to jury instruction, evidence to support finding based on instruction should be assessed "in light of" the instruction given).

In arguing that the evidence is factually insufficient to support the jury's finding, appellants begin by emphasizing that, in his affidavit in support of the lien, Kautz mentions a contract and an unpaid claim but does not expressly identify which party C&S contracted with or which party owed the debt. Appellants additionally point to Kautz's testimony wherein he acknowledged that he knew the 1999 Trust owned the property and stated that he did not have any contact with the trustee, Puskoor. Appellants maintain that this evidence demonstrates Kautz must have known the lien was fraudulent at the time it was filed, the first of the three elements appellants were required to prove under Question 6. We disagree.

Even though the jury declined to find that a preponderance of the evidence established Triple PG or Guniganti effectively controlled the 1999 Trust, there is

---

[10] In Question 6, the trial court presents the basic elements contained in Civil Practice and Remedies Code section 12.002(a). Tex. Civ. Prac. & Rem. Code § 12.002(a); *see also Merritt v. Davis*, 331 S.W.3d 857, 860-61 (Tex. App.—Dallas 2011, pet denied) (discussing elements for fraudulent lien cause of action). Because there was no objection to the charge, we need not address whether Question 6 was a proper submission.

significant evidence of a close, interconnected relationship between Guniganti, Triple PG, and the 1999 Trust.[11] Moreover, it is clear that Kautz dealt exclusively with Guniganti and other Triple PG representatives, even though the sand processing plant in question was to be built on property owned by the 1999 Trust. The jury may therefore have reasonably concluded that the evidence did not show, more likely than not, that Kautz realized C&S was not in privity with the 1999 Trust and thus that the lien was fraudulent at the time it was filed. In other words, the evidence supported the conclusion that because of his dealings with Triple PG and Guniganti and their apparently close, interconnected relationship with the 1999 Trust, Kautz believed that he was also dealing with the 1999 Trust and did not realize he could not take a valid constitutional lien on the trust's property when he filed for the lien. The jury's refusal to find that C&S filed a fraudulent lien was therefore not so contrary to the overwhelming weight of the evidence so as to be clearly wrong and manifestly unjust. *Cf. Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 530-31 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (reversing summary judgment on fraudulent lien claim based on existence of fact question for jury); *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 850 (Tex. App.—Texarkana 2010, no pet.) (reversing summary judgment on fraudulent lien claim and remanding for trial on the merits). Consequently, we overrule appellants' third issue.

---

[11] For example, Guniganti testified that he set up the 1999 Trust and appointed Puskoor as trustee. Guniganti further stated that Puskoor lived in Dallas and had asked Guniganti to go to the property from time to time to look at it because Guniganti lived much closer. Guniganti said that there was an agreement that the new sand processing plant would have the same arrangement with the 1999 Trust as did Hallett Materials before. He acknowledged that there was no written agreement, just an oral understanding between him and Puskoor, and that he was "performing services for the Trust, basically anything that was needed." Guniganti said that he did not mind doing it because it benefitted his children. Prathima Guniganti testified that she believed both of her parents had authority to sign checks on behalf of the 1999 Trust, although Guniganti testified somewhat inconsistently on this point.

## V. Attorney's Fees

In their fourth issue, appellants point out that in the event the judgment for breach of contract is reversed, as they requested in their first issue, the award of attorney's fees to C&S should also be reversed. They do not raise any other specific complaints regarding the award of attorney's fees. Because we overruled appellants' first issue, we now overrule their fourth issue.

## VI. Conclusion

Having sustained appellants' second issue, we modify the judgment to state that no privity of contract existed between C&S and the 1999 Trust at the time the lien was filed and therefore C&S was not entitled to a lien against the 1999 Trust's property. Having overruled the remainder of appellants' issues, we affirm the judgment as so modified.

/s/    Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.

14